**Eugene Jerome Joseph KLEIN,
Petitioner-Appellee,**

v.

**David HARRIS, Superintendent, Green Haven Correctional Facility, Robert Abrams, Attorney General, Respondents-Appellants.**

**No. 883, Docket 80–2282.**

United States Court of Appeals,
Second Circuit.

Argued March 4, 1981.

Decided Dec. 15, 1981.

---

Deborah L. Wolikow, Deputy Asst. Atty. Gen. of N. Y., New York City (Robert Abrams, Atty. Gen. of N. Y., Gerald J. Ryan, Asst. Atty. Gen. of N. Y., New York City, on the brief), for respondent-appellant.

Jonathan Marks, New York City, for petitioner-appellee.

Before KAUFMAN and TIMBERS, Circuit Judges, and WARD,* District Judge.

ROBERT J. WARD, District Judge:

David Harris, Superintendent of Green Haven Correctional Facility ("the State"), appeals from a judgment of the United States District Court for the Eastern District of New York (Nickerson, J.) granting the petition of Eugene Jerome Joseph Klein ("Klein") for a writ of habeas corpus. Following a jury trial in New York State Supreme Court, Queens County, Klein was convicted of felony murder and murder in the second degree. As is described below,

* Of the United States District Court for the Southern District of New York, sitting by designation.

Klein unsuccessfully pursued numerous avenues toward post-conviction relief in the New York state courts before petitioning the district court for a writ of habeas corpus. Klein's petition alleged, *inter alia*, that he was denied his due process right to a fair trial when a witness at his trial invoked the fifth amendment's privilege against self-incrimination upon being recalled to the stand and the trial judge failed either to direct the witness to testify or to strike the witness' earlier testimony. Judge Nickerson held, in an unpublished memorandum decision, (1) that the trial judge's challenged conduct constituted "plain error" of constitutional dimension and (2) that Klein was not precluded by any procedural bar from presenting his challenge to the trial judge's conduct in the context of a federal habeas corpus petition. Accordingly, Judge Nickerson granted Klein's petition and ordered that he be released if not given a new trial within sixty days. We agree with both aspects of Judge Nickerson's holding, and affirm the judgment.

## I

The facts of the case before us, as found by Judge Nickerson after an evidentiary hearing, are as follows. During the afternoon of February 23, 1967, Diana Goodman was stabbed to death in her home, located in the Borough of Queens in New York City. On March 2, 1967, Klein and one Max Rabinowitz were jointly indicted for Goodman's murder. Both men were charged with the crime of murder in the first degree. Rabinowitz, who told the police that Klein had done the stabbing, was permitted to plead guilty to a reduced charge of manslaughter in the first degree and was sentenced to a term of ten to twenty years. He has since been released, apparently after serving ten years.

Klein, who maintained that Rabinowitz had suddenly and unexpectedly killed Goodman while Klein was in an adjoining room, went to trial in Queens County Supreme Court on February 15, 1968. At the trial, three police officers testified that, on three separate occasions after his arrest, Klein made statements in which he admitted that he went with Rabinowitz to Goodman's house on the day of the murder, that he knew Rabinowitz would attempt to take money from Goodman if she refused to give it to him, and that he saw Rabinowitz stab Goodman to death. The prosecutor also called one Michael Bartley, a prisoner awaiting sentence on a plea of guilty covering ten robberies. Bartley, in return for a promise of leniency, testified that, while he and Klein were in a detention area, Klein told him that he had stabbed Goodman.

The first degree murder charge against Klein rested on alternative theories of felony murder and premeditated murder. Klein's trial counsel, believing there to be no viable defense to the felony murder charge, adopted the strategy of attempting to obtain a verdict of manslaughter by convincing the jury that it would be unfair to convict Klein of any offense greater than that to which Rabinowitz had been allowed to plead guilty. To this end, Klein's trial counsel, while aware of Rabinowitz's prior statements that Klein had done the stabbing, called Rabinowitz as a defense witness. Rabinowitz, who had not yet been sentenced, testified that he had pleaded guilty to manslaughter. Upon further questioning by Klein's trial counsel, Rabinowitz, asserting no constitutional privilege, testified that he and Klein had gone to Goodman's house together, that he had intended to take money from Goodman if she would not give it to him, and that he had held Goodman while Klein had stabbed her.

Rabinowitz then left the stand and was taken back to the detention area. Klein's trial counsel also went to the detention area to speak with Klein. As Klein's trial counsel was leaving the detention area, Rabinowitz stopped him and told him that, under pressure from the assistant district attorney, he had lied on the stand. Rabinowitz stated that he, and not Klein, had actually killed Goodman. Klein's trial counsel immediately reported this conversation to the judge and the prosecutor at a conference in chambers. Rabinowitz's attorney

was called. Upon his arrival, he told Rabinowitz not to testify further.

The defense thereupon recalled Rabinowitz to the witness stand. At this point, the judge advised Rabinowitz that he had the right to remain silent, and directed Rabinowitz's attorney to stand at his client's side in order to advise him as to each question asked by Klein's trial counsel. Rabinowitz admitted talking to Klein's trial counsel in the detention area. Klein's trial counsel then asked, "Did you tell me at that time that what you had testified to this morning was not true and that my client did not do the killing but that you did the killing?" Rabinowitz refused to answer, invoking the fifth amendment's privilege against self-incrimination. Klein's trial counsel next asked, "Would you tell us what happened on February 23, 1967, at the Goodman house at 81st Avenue?" Rabinowitz again refused to answer on fifth amendment grounds. The judge, though noting that the second question quoted above had previously been asked and answered, allowed Rabinowitz to assert the privilege in both instances. Moreover, he did not strike Rabinowitz's earlier testimony on this subject. No objection was made by Klein's trial counsel at this point.

The judge instructed the jury that it was to return two specific verdicts, one on the felony murder count and one on the premeditated murder count. With respect to the premeditated murder charge, the judge instructed the jury on murder in the first degree, murder in the second degree, and manslaughter in the first degree. In his summation, Klein's trial counsel, pursuant to the strategy described *supra*, virtually conceded guilt on the felony murder charge. He argued that, in fairness, Klein should receive no greater punishment for the crime than Rabinowitz, and consequently urged the jury to find Klein not guilty on the felony murder count and guilty only of manslaughter on the premeditated murder count. There is no indication in the record that either the prosecutor or the judge questioned the propriety of this argument. On February 26, 1968, the jury found Klein guilty of felony murder and guilty of mur-

der in the second degree. Klein was sentenced to life for felony murder and to twenty years to life for second degree murder, the sentences to run concurrently. Pursuant to the later enacted N.Y. Exec.Law § 259–h(1) & (2), these sentences were subsequently reduced, respectively, to twenty years to life and fifteen years to life.

Klein's case has been the subject of extensive post-conviction proceedings. Before Klein was sentenced, his trial counsel moved, pursuant to N.Y.Crim.Proc.Law § 465, for a new trial, or alternatively for a hearing to determine if perjury had been committed at the trial. In his motion papers, Klein's trial counsel argued that Rabinowitz's exercise of the privilege against self-incrimination upon being recalled to the witness stand "deprived [Klein] of cross-examination and thereby of a fair trial." Klein's counsel also relied upon certain letters written by Rabinowitz to Klein in April 1968, before Rabinowitz was sentenced. In substance, Rabinowitz stated in these letters that he had perjured himself at the trial because the assistant district attorney had threatened to seek imposition of the maximum sentence on him unless he named Klein as the killer. Rabinowitz further stated that, upon being recalled to the stand, he had been coerced into invoking his fifth amendment privilege by threats of a perjury prosecution. At oral argument of Klein's section 465 motion, the assistant district attorney's sole opposition was that "the witness Rabinowitz was not a People's witness, he was not called by the People, he was called by the defense, and I submit that [when] the defense calls a witness who testifies as a defense witness and later recants on his testimony, I don't see why the People should be prejudiced because of that fact." The motion was denied, and Klein was sentenced as described above.

In 1969, Klein sought a writ of error *coram nobis*, alleging that during the trial the prosecutor knowingly used perjured testimony and suppressed exculpatory evidence, thereby depriving Klein of his constitutional rights to a fair trial and due proc-

ess of law. This motion was denied by the judge who presided at Klein's trial, on the ground that the matters referred to in Klein's application were "before the Appellate tribunal as matters of record on both review of the conviction and of the order denying a new trial."

In his appeal, Klein claimed that the verdicts were unconstitutionally contradictory, that the judge denied a fair trial by failing to make inquiry with respect to the alleged perjury of Rabinowitz, and that it was error for the judge to refuse to instruct the jury on the crime of manslaughter in the second degree. Both the Appellate Division, *People v. Klein*, 37 A.D.2d 863, 326 N.Y.S.2d 995 (2d Dep't 1971), and the Court of Appeals, *People v. Klein*, 31 N.Y.2d 888, 292 N.E.2d 674, 340 N.Y.S.2d 405 (1972), affirmed Klein's conviction without opinion.

Thereafter, in March 1975, Klein filed a petition for a writ of habeas corpus in state court. He argued that the verdicts were unconstitutionally contradictory and that the dual sentences violated double jeopardy. The court dismissed the petition, stating that the writ procedure could not be utilized to review alleged errors passed on in an earlier appeal, and that in any event there was no inconsistency in the verdicts. An appeal from this decision was not perfected.

In 1976, Klein moved, pursuant to N.Y. Crim.Proc.Law § 440.10, for an order vacating the judgment of conviction. He contended that (1) the verdicts were mutually contradictory; (2) the double sentences constituted double jeopardy; (3) he received ineffective assistance from his trial counsel; and (4) the use of perjured testimony and the suppression of Rabinowitz's offer to recant violated his due process right to a fair trial. The judge who had presided at the trial found that Klein's trial counsel was competent and that the other grounds had "been reviewed thoroughly on appeal and in other tribunals." He accordingly denied Klein's motion. The Appellate Division denied leave to appeal. A motion to renew the motion was likewise denied.

Klein then filed the federal petition for a writ of habeas corpus that was the subject of the decision below. The grounds for relief stated in this petition were identical to those relied upon by Klein in his state court section 440.10 motion. Judge Nickerson, in a memorandum decision filed February 5, 1980, ordered that an evidentiary hearing be conducted so as to determine "the existence of perjured testimony at petitioner's trial." The evidentiary hearing took place on May 30 and June 2, 1980. In a memorandum decision filed September 26, 1980, Judge Nickerson held that Klein "was denied due process by the failure of the trial judge either to direct Rabinowitz to answer when he was recalled to the stand or to strike his earlier testimony identifying Klein as the killer." Judge Nickerson thus found it unnecessary to address Klein's other contentions. A judgment was accordingly entered that granted Klein's petition and ordered that Klein be released unless he was given a new trial within sixty days. This appeal followed.[1]

We proceed below to consider in turn the two substantial questions raised by this appeal: first, whether there is any procedural bar to federal habeas corpus review of the constitutional sufficiency of the state trial judge's conduct, and then, upon concluding that no such bar exists, whether Judge Nickerson correctly determined that the state trial judge committed prejudicial error of constitutional dimension.

## II

Klein has, as described, made repeated efforts, over the course of nearly ten years, to gain relief from the New York state court system. The State contends that, in spite of these efforts, Klein's case is not in a procedural posture that permits a federal court to grant a habeas corpus petition on the basis of the state trial judge's failure either to direct Rabinowitz to answer or to strike Rabinowitz's testimony. First, the State argues that Klein has not properly

1. Judge Nickerson subsequently ordered that Klein be released on bail. Klein therefore has not been incarcerated during the pendency of this appeal.

presented this precise challenge to the trial judge's conduct to the New York state courts, meaning that he has not exhausted his state remedies as required by 28 U.S.C. § 2254(b). Second, relying upon *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the State contends that Klein forfeited this claim as a ground for federal habeas relief by failing to complain of the trial judge's conduct either in a contemporaneous objection at trial or in the course of his direct appeal. While the exhaustion rule imposed by section 2254(b) and the forfeiture rule articulated in *Sykes* share similar policy bases, we conceive them to be analytically distinct and accordingly proceed to consider them separately.

## A

■ The rule that a person in state custody must exhaust his state remedies as a predicate to being entitled to institute an application for federal habeas corpus relief is codified in 28 U.S.C. § 2254(b), which provides that "[a]n application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." The exhaustion rule is rooted in a policy of fostering federal-state comity by giving the state the initial opportunity to pass upon and correct alleged violations of its prisoners' federal constitutional rights. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

■ In order to give proper account to the policy concern that underlies the exhaustion rule, the courts of this Circuit have adopted a two-stage inquiry for determining whether the requisite exhaustion has occurred. First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. *Barnes v. Jones*, 665 F.2d 427, at 432 (2d Cir. 1981); *Wilson v. Fogg*, 571 F.2d 91, 93 (2d Cir. 1978). This rule requires not only that the petitioner must have made the same factual complaint to the state court,

*see Boothe v. Superintendent, Woodbourne Correctional Facility*, 656 F.2d 27, 31 (2d Cir. 1981); *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir. 1979), but also that his state court brief must have contained words, such as "under the due process clause" or "under the Constitution," that expressly spell out the petitioner's reliance on the United States Constitution as his legal basis for relief, *see Daye v. Attorney General*, 663 F.2d 1155 at 1156–57 (2d Cir. 1981); *Gayle v. LeFevre*, 613 F.2d 21, 22–23 (2d Cir. 1980); *Johnson v. Metz*, 609 F.2d 1052, 1054–55 (2d Cir. 1979); *Anderson v. Le-Fevre*, 509 F.Supp. 199, 200 (S.D.N.Y.1981); *Rivera v. Smith*, 492 F.Supp. 1017, 1018 (S.D.N.Y.1980).

Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim. *See* 28 U.S.C. § 2254(c) (providing that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"). Thus, where the petitioner has appealed his conviction to the highest state court, and throughout the course thereof has fairly presented the claim that is now the gravamen of his federal habeas corpus petition, he has satisfied the exhaustion requirement. *Wilson v. Harris*, 595 F.2d 101, 102 (2d Cir. 1979). However, where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim, he has failed to exhaust his state remedies even if he presented the claim at the trial level. *Williams v. Greco*, 442 F.Supp. 831, 833 (S.D.N.Y.1977). In such a case, the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement. *See Johnson v. Metz, supra*, 609 F.2d at 1055–56 (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts

to proceed by filing a motion to vacate judgment pursuant to N.Y.Crim.Proc.Law § 440.10).[2] If he does so, and relief is denied, and he thereupon unsuccessfully employs all the state appellate procedures available for review of such denial, the petitioner has satisfied the exhaustion requirement. *Forman v. Smith*, 482 F.Supp. 941, 946 (W.D.N.Y.1979), *rev'd on other grounds*, 633 F.2d 634 (2d Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981).

■ Applying this two-stage inquiry to the case before us, we conclude that Klein adequately exhausted his state remedies. In his 1976 motion to vacate his conviction, brought pursuant to N.Y.Crim.Proc.Law § 440.10, Klein argued, after describing in detail the facts of Rabinowitz's testimony and subsequent recantation, that "[t]he misconduct of the Court and prosecutor to permit the false testimony of the true facts, to stand uncorrected, although it may have been unsolicited, was a denial of defendant's right to fundamental fairness of due process of a fair trial in violation of the Fourteenth Amendment's due process clause." By this argument, particularly the

use of the term "the Court," Klein squarely presented the same factual ground for relief that Judge Nickerson ultimately relied upon in granting Klein's federal habeas petition. The only involvement of "the Court" in permitting Rabinowitz's testimony to "stand uncorrected" was in allowing Rabinowitz to assert his fifth amendment privilege and in failing to strike his prior testimony. This was plainly the "misconduct" of which Klein was complaining, and precisely the conduct on which Judge Nickerson based his decision.[3] We therefore are convinced that Klein fairly presented his federal constitutional claim to an appropriate state court,[4] and that he thereby has satisfied the first prong of the test for exhaustion of state remedies.[5]

We are also persuaded that the test's second prong is met here. Subsequent to the denial of his section 440.10 motion, Klein sought leave to appeal that denial to the Appellate Division pursuant to N.Y. Crim.Proc.Law § 450.15(1). The Appellate Division, acting pursuant to N.Y.Crim. Proc.Law § 460.15(1), denied leave to appeal. Under N.Y.Crim.Proc.Law § 450.90, no appeal to the New York Court of Appeals lies from an order denying a motion

2. We need not consider how, in the event the relevant state law provides no procedure by which the constitutionality of a state conviction can be collaterally attacked, a prospective federal habeas corpus petitioner who has failed to present his claim on direct appeal of his state conviction can proceed to satisfy the exhaustion-of-state-remedies rule. All of the states of this Circuit have legal mechanisms through which an individual may collaterally attack the constitutionality of his conviction. *See* Conn. Gen.Stat. §§ 52–466—52–470; N.Y.Crim. Proc.Law § 440.10; Vt.Stat.Ann. tit. 12, §§ 3951–85.

3. Our conclusion on this point is bolstered by the fact that the state court judge to whom Klein's § 440.10 motion was addressed plainly recognized that Klein was making this claim. In denying Klein's motion, the judge, who had presided at Klein's trial, defended his actions, observing that when Rabinowitz was recalled to the stand "the Court was obliged to advise [him] of his rights before he further incriminated himself."

4. Under the principles stated above, by characterizing the trial judge's conduct as having been "in violation of the Fourteenth Amendment's due process clause," Klein adequately

denominated his argument as a federal constitutional claim. *See Gayle v. LeFevre, supra.* Further, in proceeding by way of a § 440.10 motion, Klein unquestionably chose an appropriate forum in which to commence his exhaustion of state remedies. *See Johnson v. Metz, supra.*

5. Klein satisfied the first prong of the exhaustion test on one other occasion, namely, when he filed his motion for a new trial pursuant to N.Y.Crim.Proc.Law § 465. There, he argued, *inter alia*, that the trial court, by permitting Rabinowitz to exercise his fifth amendment privilege upon being recalled, "deprived [Klein] of cross-examination and thereby of a fair trial." The parties agree that Klein thereby fairly presented the trial court with both the factual basis and the legal theory of his claim. However, Klein's § 465 motion cannot form the predicate for a conclusion that he satisfied the exhaustion requirement because Klein did not rely on this ground in his appeal from the denial of the § 465 motion. He thereby failed, insofar as the § 465 motion is concerned, to satisfy the second prong of the exhaustion-of-state-remedies test.

for leave to appeal to the Appellate Division. *People v. Williams,* 342 N.Y.S.2d 75, 76 (App.Div. 2d Dep't 1973).[6] Thus, once the Appellate Division denied Klein leave to appeal the denial of his section 440.10 motion, he had reached "the end of the road within the state system." *United States ex rel. Graham v. Mancusi,* 457 F.2d 463, 467 (2d Cir. 1972).

In *Fielding v. LeFevre,* 548 F.2d 1102, 1106 (2d Cir. 1977), we summarized the two-stage inquiry outlined above by observing that "[i]n order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least once, on direct or collateral review." This is precisely what Klein did here, by first fairly presenting to the trial court a federal constitutional claim based on the trial judge's failure either to direct Rabinowitz to answer or to strike Rabinowitz's testimony, and then utilizing all appellate remedies available for review of the denial of that claim. As a result, we hold that Klein adequately exhausted his state remedies with respect to this particular claim. This leaves the question, to which we now turn, of whether Klein forfeited this claim during the peripatetic course of his travels through the New York state court system, thereby precluding federal habeas corpus relief in spite of Klein's satisfaction of the exhaustion requirement.

### B

■ The State argues that Klein, by not objecting at trial when the trial judge failed either to direct Rabinowitz to answer or to strike Rabinowitz's testimony, and by subsequently omitting to raise the trial judge's conduct as a ground in support of his direct appeal, forfeited any claim based on this conduct as a matter of New York criminal procedure law, meaning, under the analysis set forth in *Wainwright v. Sykes, supra,* that Klein may not be permitted to present this claim as a ground for federal habeas corpus relief. Having carefully considered the holding and rationale of the *Sykes* decision, along with the prior decisions elaborating on *Sykes* rendered by the courts of this Circuit, we conclude that the State's forfeiture argument is without merit.

We agree that *Sykes,* the latest in a line of not entirely consistent Supreme Court cases dealing with the forfeiture question,[7] governs our analysis of the forfeiture issues presented by this case.[8] In *Sykes,* the Supreme Court considered the availability of federal habeas corpus to review a state convict's constitutional claim, where the convicting state's courts had previously refused to consider the claim on the merits because of noncompliance with a state contemporaneous-objection rule. 433 U.S. at 74, 97 S.Ct. at 2499–2500. The Court therein announced the "cause-and-prejudice" test, which bars federal habeas corpus relief under these circumstances "absent a showing of cause for the noncompliance and some showing of actual prejudice resulting

---

6. While we have found no decision of the New York Court of Appeals to this effect, we find no ground for believing that the New York Court of Appeals might be inclined to interpret N.Y. Crim.Proc.Law § 450.90 in a manner that conflicts with the holding in *Williams. See* Petition, Exhibit E, *Cunningham v. Reid,* 81 Civ. 3162(RJW) (S.D.N.Y., filed May 26, 1981) (letter dated January 30, 1981, in response to petitioner's request for leave to appeal to New York Court of Appeals, from Joseph W. Bellacosa, Clerk of Court, on behalf of Chief Judge Cooke, stating that "under the applicable provisions of the Criminal Procedure Law ..., [an Appellate Division order denying leave to appeal the Supreme Court's denial of petitioner's motion to vacate his conviction] is not appealable to the Court of Appeals").

7. We have reviewed this line of cases in a number of our recent decisions, most notably in *Forman v. Smith,* 633 F.2d 634, 638, 638–40 (2d Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981).

8. As noted, the State claims that Klein committed procedural defaults both at trial and during the course of his direct appeal. *Sykes* itself arose in the context of a procedural default committed at the trial level. In *Forman v. Smith, supra,* 633 F.2d at 640, we held that *Sykes* also governs the forfeiture issue in cases where a procedural default occurred during the course of a direct appeal from a state court conviction. Thus, *Sykes* governs our analysis of the effect to be given to both types of procedural default that allegedly occurred here.

from the alleged constitutional violation." *Id.* at 84, 97 S.Ct. at 2505.

After *Sykes*, then, a federal habeas court, when faced with an argument that it is barred from considering the petitioner's federal constitutional claim because the petitioner forfeited that claim as a matter of state law by committing a procedural default either at trial or during the course of a direct appeal, must make two distinct determinations. First, the federal court must determine whether, as in *Sykes*, a state court has held that the petitioner is precluded, by virtue of a procedural default, from presenting his federal constitutional claim in state court. Second, assuming that a state court did so hold, the federal court must consider whether there was adequate cause for the petitioner's default and sufficient resultant prejudice to satisfy the *Sykes* standard. Cause-and-prejudice analysis is, therefore, triggered only if the federal court determines that the state courts have refused to hear a petitioner's federal constitutional claim because of a state law procedural default. Here, as we discuss below, no New York state court has ever refused on such a ground to hear Klein's claim that the trial judge erroneously failed either to direct Rabinowitz to answer or to strike Rabinowitz's testimony. We hold on this basis alone that Klein did not forfeit this federal constitutional claim for federal habeas corpus purposes, and we accordingly need not decide whether Klein can demonstrate sufficient cause and prejudice to satisfy *Sykes*.

We reject any argument that cause-and-prejudice analysis is or should be triggered by the mere fact of a procedural default, and that our preliminary inquiry should thus be whether such a default occurred here as a matter of New York law, rather than whether a New York state court has determined that such a default took place. To be sure, we have held that the absence of *express reliance* by a state court on procedural grounds does not determine whether the cause-and-prejudice analysis contemplated by *Sykes* is triggered. *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir.), *cert.*

denied, ——— U.S. ———, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981); *Gruttola v. Hammock*, 639 F.2d 922, 929 (2d Cir. 1981). Nevertheless, we have stated that the general rule requires a federal habeas court considering whether to engage in cause-and-prejudice analysis to determine first whether state procedural bars were invoked by the state courts. *Washington v. Harris*, 650 F.2d 447, 451 (2d Cir. 1981); *Gruttola v. Hammock, supra*, 639 F.2d at 929; *see, e.g., County Court v. Allen*, 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777 (1979). This determination is to be made on a case-by-case basis, upon a consideration of all the relevant indicia. Thus, where the state court does not make its ground of decision explicit, the absence of express reliance on a procedural ground does not mandate a conclusion that the state court's decision was not procedurally based. *See, e.g., Wright v. Bombard*, 638 F.2d 457, 460 (2d Cir. 1980), *cert. denied*, 450 U.S. 935, 101 S.Ct. 1400, 67 L.Ed.2d 370 (1981). At the same time, the mere fact that an adequate procedural ground was available to the state court does not compel a conclusion that this ground formed the basis for the state court's holding. *See, e.g., Alburquerque v. Bara*, 628 F.2d 767, 772 (2d Cir. 1980).

Our interpretation of *Sykes* as requiring a determination that the state court *actually relied* upon a procedural default, and not merely a showing that the state court had an adequate procedural ground available to it, is entirely consistent with the rationale of *Sykes*. In *Forman v. Smith*, 633 F.2d 634, 639 (2d Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981), we recently described the four factors that underpinned the *Sykes* decision as follows:

(1) comity: federal courts should respect state rules of procedure; (2) finality: the claim, if presented at trial, might have been dealt with in a way that disposed of either the claim itself or the entire case; (3) accuracy: the state trial, unlike federal habeas review, takes place a relatively short time after the events of the crime,

when witnesses are available and memories are fresh; and (4) trial integrity: all issues should be fully aired at the trial, with no inducement for the defendant, or his attorney, to withhold certain issues in the hope of later obtaining a more favorable ruling from a federal court.

In our view, the importance that we assign to these four factors in any given case should be no greater than that assigned to them by the state courts. *Washington v. Harris, supra,* 650 F.2d at 452. *See also Johnson v. Fogg,* 653 F.2d 750, 752 (2d Cir. 1981). Thus, where the state courts have, for whatever reason, declined to "respect" state rules of procedure, and instead have ignored a procedural default and reached the merits of the petitioner's claim, we should do the same. "When the state courts fail to give preclusive effect to their own procedural rules, comity concerns do not require that the federal courts give greater respect to those rules than the states themselves." *Mitchell v. Smith,* 633 F.2d 1009, 1011 (2d Cir. 1980) (Timbers, J.), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981). Further, it would be nonsensical for a federal habeas court, out of concerns for trial finality, accuracy, and integrity, to refuse to review the merits of a petitioner's claim on the ground of a procedural default where the state courts themselves have found these concerns insufficient to justify invocation of the procedural rule. In our view, then, the concerns relied upon in *Sykes* are raised not by the mere commission of a procedural default, but only where the procedural default forms the basis for a state court refusal to review the merits of the petitioner's claim.

 Upon a review of the record before us, we are convinced that there is no basis for concluding that a New York state court ever invoked New York criminal procedure law to preclude its consideration of Klein's claim that the state trial judge erroneously failed either to direct Rabinowitz to answer or to strike his testimony. We decline to invoke such a procedural bar for the first time now. It is accordingly unnecessary for us to determine whether a procedural default actually occurred here that might have justified a state court in refusing to consider the merits of Klein's federal constitutional claim.

The State contends that Klein committed a procedural default at trial by failing to make a contemporaneous objection to the trial judge's conduct regarding Rabinowitz's recantation. *See* N.Y.Crim.Proc.Law § 470.05(2). As noted earlier, on direct appeal of Klein's conviction; both the Appellate Division and the Court of Appeals affirmed without opinion. However, unlike other cases recently litigated in this Circuit,[9] here we cannot possibly presume from their silence that the New York appellate courts, instead of reaching the merits of the particular federal constitutional claim now before us, invoked New York's contemporaneous-objection rule to bar consideration of that claim. The parties have agreed that the federal constitutional claim at issue here was not raised on Klein's direct appeal. Since the New York appellate courts were not at this time even *asked* to consider Klein's federal constitutional claim, we cannot possibly hold that those courts invoked a state procedural rule to *preclude* their consideration of that claim.

Alternatively, the State argues that Klein's conceded failure to make this particular constitutional argument on appeal constituted a procedural default on which the state trial court could have relied to deny this claim when presented in Klein's section 440.10 motion. *See* N.Y.Crim.Proc.Law § 440.10(2)(c). The fact is, however, that the state trial judge, in passing on the section 440.10 motion, *did not* rely on any procedural ground, but reached the merits of Klein's claim, denying it on the ground that "the Court was obliged to advise [Rabinowitz] of his rights before he further incriminated himself." Our conclusion that

<hr/>

9. *See, e.g., Taylor v. Harris, supra,* 640 F.2d at 2 n.3 (concluding, where New York appellate courts affirmed petitioner's conviction without opinion, that affirmance with respect to petitioner's federal constitutional claim was on grounds of procedural default rather than on the merits).

the judge did not rely on any procedural ground to deny Klein's claim is bolstered by his comment that "all of the grounds upon which this application is made [save Klein's ineffectiveness of counsel claim] have been reviewed thoroughly on appeal." Plainly, since the trial judge thought that Klein had raised the constitutional claim now before us during the course of his direct appeal, he could not possibly have based his denial of that claim on the ground that Klein *failed* to raise it during his direct appeal.

 In sum, we find no basis for concluding that a New York state court has ever invoked a state procedural rule to preclude review of Klein's federal constitutional challenge to the trial judge's manner of dealing with Rabinowitz's recantation, and accordingly hold that Klein has not, for the purposes of federal habeas corpus review, forfeited that claim. Since we also hold that Klein has adequately exhausted his state remedies, we conclude that we are permitted to review the constitutional sufficiency of the trial judge's conduct, and we now proceed to do so.

### III

Our review of the state trial judge's conduct requires us to answer two questions: first, whether the trial judge committed error of constitutional dimension by permitting Rabinowitz, upon being recalled to the stand, to invoke the fifth amendment's privilege against self-incrimination; second, whether the trial judge's error, notwithstanding its constitutional stature, was harmless in the context of this case. We consider these questions in turn below.

### A

Klein contends that Rabinowitz, by testifying about the circumstances of the crime when he first took the stand, waived any fifth amendment privilege he might have been entitled to invoke to avoid testifying about Goodman's murder. The trial judge thus erred, in Klein's view, by permitting Rabinowitz to invoke the fifth amendment when he was recalled to the stand. Klein argues that this error, coupled with the

trial judge's simultaneous failure to strike Rabinowitz's prior testimony, deprived him of his sixth amendment right of confrontation and of his fourteenth amendment due process right to a fair trial.

 There is no doubt that a waiver of the fifth amendment's privilege against self-incrimination may, in an appropriate case, be inferred from a witness' prior statements with respect to the subject matter of the case, without any inquiry into whether the witness, when he made the statements, actually knew of the existence of the privilege and consciously chose to waive it. Note, *Testimonial Waiver of the Privilege Against Self-Incrimination*, 92 Harv.L.Rev. 1752, 1752 (1979). However, such a "testimonial waiver" is not to be lightly inferred, *see Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949), and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver, *see Emspak v. United States*, 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955); *United ed States v. O'Henry's Filmworks, Inc.*, 598 F.2d 313, 318–19 (2d Cir. 1979). Indeed, we read the prior decisions of the Supreme Court and the courts of this Circuit to hold that a court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

 The first prong of the test for a testimonial waiver of the fifth amendment's privilege against self-incrimination derives from our decision in *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942), *cert. dismissed*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), where Judge Learned Hand wrote:

It must be conceded that the privilege is to suppress the truth, but that does not

mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition. The time for a witness to protect himself is when the decision is first presented to him; he needs nothing more, and anything more puts a mischievous instrument at his disposal. In *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), which is often described as the leading case on the subject of testimonial waiver, the Supreme Court echoed Judge Hand's admonition that courts deciding testimonial waiver questions should be attentive to whether the witness' prior testimony has created a significant danger of distortion. "To uphold a claim of privilege in this case," wrote the Court, "would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony." *Id.* at 371, 71 S.Ct. at 441. Our concern to focus on distortion is a function of the principle that a waiver of the fifth amendment's privilege against self-incrimination should be inferred only in the most compelling of circumstances. Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation. *See E. F. Hutton & Co. v. Jupiter Development Corp.*, 91 F.R.D. 110, 116 (S.D.N.Y.1981).

▬ The second prong of the test for a testimonial waiver, like the first prong, is founded on the principle that a waiver of the fifth amendment's privilege against self-incrimination should be inferred from a witness' prior statements only in the most compelling of circumstances. It would be unfair to the witness for a court to infer such a waiver unless the witness had reason to know, when he made the prior statements, that he might thereby be found to have waived his fifth amendment privilege. The requisite reason to know that a waiver might be inferred should be found only if the witness' prior statements were (a) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding, *see United States v. O'Henry's Filmworks, Inc., supra*, 598

F.2d at 317–19 (statements must have been voluntary); *United States v. Housand*, 550 F.2d 818, 821 n.3 (2d Cir.), *cert. denied*, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977) (statements must have been made in same judicial proceeding); *E. F. Hutton & Co. v. Jupiter Development Corp., supra*, 91 F.R.D. at 114 (statements must have been made under oath), and (b) "incriminating," meaning that they did not merely deal with matters "collateral" to the events surrounding commission of the crime, *see, e.g., Dunbar v. Harris*, 612 F.2d 690, 692–94 (2d Cir. 1979), but directly inculpated the witness on the charges at issue, *see Sigety v. Abrams*, 632 F.2d 969, 973 (2d Cir. 1980); *United States v. James*, 609 F.2d 36, 45 (2d Cir. 1979), *cert. denied*, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). Where a witness has made statements that were both "testimonial" and "incriminating," as those terms are defined above, he has made statements that, by virtue of their "testimonial" nature, will likely influence the finder of fact, and that, by virtue of their "incriminating" nature, contain information that the witness was privileged not to reveal. Thus, any witness who makes testimonial, incriminating statements plainly has reason to know, when he does so, that these statements may be interpreted as a waiver of his fifth amendment privilege against self-incrimination. Such a witness certainly is not treated unfairly, then, if a court ultimately interprets the statements in this fashion.

▬ Applying the test for a testimonial waiver to the case before us, it is clear that both prongs are satisfied with respect to Rabinowitz's testimony when he first took the stand. Once Rabinowitz's recantation occurred, it was plain that his prior testimony, which was devastating to Klein's case, had created a significant likelihood that the jury had been left with, and thus was prone to rely on, a distorted view of the truth. Since the misleading statements were made while Rabinowitz was testifying under oath during a criminal trial, and since these statements incriminated Rabinowitz with respect to the crimes at issue, Rabinowitz certainly had reason to know that these

statements would be interpreted as a waiver of his fifth amendment privilege against self-incrimination. Accordingly, we hold that Rabinowitz, by testifying freely about the circumstances of the crime when he first took the stand, waived any fifth amendment privilege he might otherwise have been entitled to invoke to avoid testifying concerning Goodman's murder. The state trial judge thus erred in allowing Rabinowitz to invoke the fifth amendment's privilege against self-incrimination when he was recalled to the stand.

Where, as here, a witness' prior testimony results in a testimonial waiver of the witness' fifth amendment privilege, the trial judge must, if the witness is subsequently recalled to the stand, direct the witness to testify, if necessary under penalty of contempt. *Brown v. United States*, 356 U.S. 148, 154–57, 78 S.Ct. 622, 626–628, 2 L.Ed.2d 589 (1958). If the witness thereafter continues to refuse to testify, and if the refusal precludes the defendant from testing the truth of the witness' prior testimony, the trial judge must strike the prior testimony. *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir.), *cert. denied*, 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). The failure of the trial judge to take such corrective action deprives the defendant of his sixth amendment right of confrontation. *Dunbar v. Harris, supra*, 612 F.2d at 692–93.

Here, the trial judge did not direct Rabinowitz, upon being recalled to the stand, to answer the questions posed by Klein's trial counsel; nor did he threaten Rabinowitz with being held in contempt once he refused to answer those questions. Instead, the trial judge actively encouraged Rabinowitz not to answer the questions put to him by Klein's trial counsel. While Rabinowitz's refusal to testify upon being recalled to the stand plainly deprived Klein of an opportunity to test the truth of Rabinowitz's prior testimony, the trial judge nevertheless failed to strike Rabinowitz's prior testimony. At oral argument of this appeal, counsel for the State frankly stated: "It was incorrect [for the state trial judge] . . . to allow the privilege, or, in the event he did allow it, not to strike the prior testimony. It was a wrong ruling. I can't begin to stand here and defend that ruling." We also find the trial judge's conduct indefensible, and accordingly hold, since the due process clause of the fourteenth amendment makes state compliance with the confrontation clause of the sixth amendment obligatory, *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965), that the trial judge's conduct deprived Klein of his sixth amendment right of confrontation. Having found that error of constitutional dimension occurred at Klein's trial, we turn to the question whether this constitutional error was, in the context of this case, harmless.

B

The State, while virtually conceding that error of constitutional dimension occurred at Klein's trial, argues that this error was harmless and hence could not properly form the basis for Judge Nickerson to grant a habeas corpus petition. Specifically, the State contends that Rabinowitz's testimony ran only to the premeditated murder branch of the charges against Klein, meaning that the trial judge's error did not taint the jury's verdict finding Klein guilty of felony murder. Since Klein was sentenced concurrently on the two counts, and his felony murder sentence exceeded his second degree murder sentence, the State can perceive no harm to Klein in being found guilty of second degree murder. *See United States v. Smith*, 343 F.2d 607, 609 (2d Cir. 1965).

We cannot accept this argument. The Supreme Court has imposed narrow limitations on the ability of a reviewing court to conclude that a federal constitutional error committed during a criminal trial was "harmless." Some constitutional rights are so basic to a fair trial that their infraction may never be treated as harmless error. *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). Those federal constitutional violations that do not fall in the category of infractions that demand "automatic rever-

sal" may be deemed nonprejudicial in a given case, but only if the reviewing court is able to declare a belief that the violation in question was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Forman v. Smith, supra,* 633 F.2d at 642.[10]

■ Were this a case of first impression, we might be inclined to hold that the sixth amendment's right of confrontation is "so basic to a fair trial" that it falls in the category of rights that automatically trigger reversal when violated. We observe that the Supreme Court has described the right of confrontation as "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas, supra,* 380 U.S. at 405, 85 S.Ct. at 1068. However, in *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969), the Supreme Court declined to hold that reversal was automatically warranted by a violation of the rule set down under the confrontation clause in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We interpret *Harrington,* which was reaffirmed by the Supreme Court in *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1059–1060, 31 L.Ed.2d 340 (1972), to hold that violations of the confrontation clause may, in an appropriate case, be declared harmless. We are convinced, however, that this is not such an appropriate case.

■ In order to conclude that Klein was not prejudiced by the federal constitution violation that occurred here, we must, as noted, be able to declare a belief that this violation was harmless beyond a reasonable doubt. *Chapman v. California, supra,* 386 U.S. at 25, 87 S.Ct. at 828–829. The heavy burden imposed by *Chapman* derives from the principle that, since a holding that an error of constitutional dimension was nonprejudicial is a factual determination, a reviewing court should not lightly find a constitutional error to have been nonprejudicial, particularly where, as here, the defendant's constitutional right of trial by jury would be implicated by such appellate fact-finding. *See* Goldberg, *Harmless Error: Constitutional Sneak Thief,* 71 J.Crim.L. & Criminology 421, 427–32 (1980). Our decision whether we have the requisite reasonable doubt depends on our assessment of the significance of both the erroneously admitted evidence (*i.e.,* Rabinowitz's prior testimony) and the erroneously withheld evidence (*i.e.,* Rabinowitz's recantation) relative to the totality of the proof offered against Klein. *See Hendrix v. Smith,* 639 F.2d 113, 115 (2d Cir. 1981). In assessing the significance of the error that occurred here, we must be attentive to the danger that the jury might have allowed the erroneously admitted evidence to "spill over" and infect its consideration of facially unrelated aspects of the case, *see Washington v. Harris, supra,* 650 F.2d at 453; *United States v. Ferrara,* 451 F.2d 91, 97 (2d Cir. 1971), *cert. denied,* 405 U.S. 1032, 92 S.Ct. 1291, 31 L.Ed.2d 489 (1972), and to the

10. We are aware that the decision rendered by the panel in *Krische v. Smith,* 662 F.2d 177 at 179 (2d Cir. 1981), suggests that harmless error review of a constitutional error such as occurred here might be governed by the standard set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), rather than that enunciated in *Chapman.* Under the *Kotteakos* standard, an error should be found harmless if the reviewing court has a "fair assurance . . . that the judgment was not substantially swayed by the error." 328 U.S. at 765, 66 S.Ct. at 1248. However, *Kotteakos* sets the standard for harmless error review of *nonconstitutional* errors committed during federal criminal trials, and does not govern harmless error review of *constitutional* error such as

occurred here. *United States v. Seidel,* 620 F.2d 1006, 1013 n.13 (4th Cir. 1980); *see* Note, *Harmless Error: The Need for a Uniform Standard,* 53 St. John's L.Rev. 541, 556–58 (1979). Thus, while we have consistently applied the *Kotteakos* standard in appeals where errors of nonconstitutional dimension were allegedly committed during federal criminal trials, *see, e.g., United States v. Ronder,* 639 F.2d 931, 935 (2d Cir. 1981), we have never done so where the alleged error was constitutional in nature. Given the Supreme Court's consistent reiteration of the *Chapman* standard since its enunciation, *see, e.g., United States v. Henry,* 447 U.S. 264, 269 n.5, 100 S.Ct. 2183, 2186 n.5, 65 L.Ed.2d 115 (1980), we do not propose to depart from *Chapman* for the first time here.

difficulty that a reviewing court inevitably faces in endeavoring to estimate the potential impact of wrongfully excluded evidence, see Note, *Harmful Use of Harmless Error in Criminal Cases*, 64 Cornell L.Rev. 538, 542–43 (1979).

 We have substantial doubt that, if the trial judge had directed Rabinowitz, upon being recalled to the stand, to answer the questions posed by Klein's trial counsel, and if Rabinowitz had then proceeded to testify that he had done the actual killing, the jury would still have concluded that Klein was beyond a reasonable doubt Goodman's actual killer and hence guilty of second degree murder.[11] Nor are we certain beyond a reasonable doubt that, under these circumstances, the strategy of Klein's trial counsel would not have been successful in winning acquittal for Klein on the felony murder count. As a result, even though we are permitted, in certain cases, to declare a violation of a defendant's right of confrontation to have been "harmless," we cannot make such a finding here with respect to either count on which Klein was convicted.

 The dissent suggests that our refusal to find harmless error is somehow "speculative." We disagree. Where, as here, the question whether the jury would have reached the same determination in an error-free trial is open to reasonable doubt, the Supreme Court has directed the reviewing court *not* to speculate as to what the jury would have done had the error not been committed, but instead to reverse the conviction and order a new trial. That is all we have done here; we do not speculate as to what the jury would have done had the error not occurred or what the outcome of a new trial would be. Indeed, it is the dissent that engages in speculation, by concluding that the jury would have still convicted Klein of felony murder had Rabinowitz admitted that he did the actual killing. For our part, we merely observe that the question is one that is reasonably debatable;

this conclusion alone prevents us from calling the error harmless.

## IV

We find no procedural bar to federal habeas corpus review of the constitutional sufficiency of the state trial judge's conduct when Rabinowitz was recalled to the stand. Judge Nickerson correctly concluded that the state trial judge committed error of constitutional dimension. The error was not harmless beyond a reasonable doubt with respect to either count on which Klein was convicted. Klein is therefore entitled to a new trial on both the premeditated murder count and the felony murder count.

The judgment of the district court is affirmed.

KAUFMAN, Circuit Judge (concurring):

I concur fully in Judge Ward's thorough opinion. Nevertheless, Judge Timbers's vigorous dissent moves me to address briefly the policies a federal court must heed when undertaking habeas corpus review of a state court conviction. I am not unmindful of the well-considered reasons underlying our general reluctance to tamper with state court judgments of conviction. In *Forman v. Smith*, 633 F.2d 634 (2d Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981), we articulated a number of factors the Supreme Court identified in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) for determining whether noncompliance with a state procedural rule precludes federal habeas review. Comity, we stated, mandates that, in general, federal courts should respect state court proceedings. Finality is a particularly relevant factor in this case because Klein was convicted in 1968, and we find ourselves, thirteen years later, still embroiled in this controversy. A closely related element is accuracy: a state trial, unlike federal habeas review, is conducted a relatively short time after the alleged crime has

---

11. Aside from Rabinowitz's testimony prior to his recantation, Bartley's was the only testimony to the effect that Klein, rather than Rabinowitz, actually did the killing. As noted earlier, Bartley's testimony was tainted by the fact that he testified in return for the prosecutor's promise of leniency with respect to the robbery charges that he faced.

been committed, at a time when witnesses are available and memories are fresh. Finally, we noted the importance of preserving trial integrity. To meet this concern, federal habeas rules should be fashioned so that all issues are fully aired in the state proceedings, thereby eliminating any inducement for the defendant or his attorney to withhold certain issues until federal habeas review to obtain a more favorable ruling from a federal court.

With these compelling considerations firmly in mind, I nonetheless must agree with Judge Ward that Klein's conviction should be reversed. In *Forman v. Smith, supra*, we recognized that principles of federalism are not the sole virtues federal courts must seek to protect when deciding cases upon habeas review. We stated that a state court has an obvious interest in having its *"procedures maintained without circumvention in federal courts" "[u]nless the procedure itself raises due process concerns."* 633 F.2d at 639–40 (emphasis added). In this case, the conduct challenged by Klein raises issues of the most serious constitutional dimension. The state trial judge clearly committed error of constitutional magnitude by permitting Rabinowitz to invoke his Fifth Amendment privilege against self-incrimination, thus preventing him from retracting his inculpatory statements about Klein's actions and, in effect, demolishing the usefulness of cross-examination. He then compounded the error by failing to strike Rabinowitz's prior testimony. *See Brown v. United States*, 356 U.S. 148, 154–57, 78 S.Ct. 622, 626–628, 2 L.Ed.2d 589 (1958); *Dunbar v. Harris*, 612 F.2d 690, 692–93 (2d Cir. 1979). It simply cannot be disputed that Rabinowitz's testimony that Klein killed Goodman shattered Klein's case. Rabinowitz's purported whispered aside to Klein's lawyer that he, and not Klein, had been actually responsible for the murder, if presented to the jury, could have struck a fatal blow to the state's case. Moreover, I believe Judge Ward correctly concluded that Klein met the requirement of exhausting his state remedies. He presented his federal constitutional claim based on this misconduct to the trial court, and he appears to have diligently pursued all available state appellate remedies.

Accordingly, Klein's conviction must be reversed. To hold otherwise would be to elevate the rubric of federalism to a preferred position over the constitutional right to a fair trial. Cognizant as I am of the restraint federal judges must exercise when reviewing a state court conviction, the impropriety of intercession evaporates for me in light of the seriousness of the error committed at the trial.[1]

TIMBERS, Circuit Judge, dissenting:

The majority today releases[1] a New York state prisoner who was convicted of a murder committed more than 14 years ago. His

---

1. I suggest to my esteemed brother Timbers that "magna res est vocis et silentii tempora nosse." Seneca, *De Moribus.* (It is a great thing to know the season for speech and the season for silence.) In Footnote 4 to his dissent, my brother Timbers queries why I have not addressed what he regards as two essential questions in my concurrence. A concurrence is not the "season for speech" on all matters. In any event, I cannot attach the seeming significance to my "silence" which Judge Timbers perceives. The response to the first question is most obvious; elaboration would be sheer redundancy. The "essential question" is not whether federal courts are more competent than state courts to pass upon the conduct of the state trial judge but whether Klein was procedurally barred from federal habeas relief as a result of any failure properly to raise his claim in state court. A lengthy response to the second question seems equally superfluous. When a question is couched, as is Judge Timbers's, in terms of whether state or federal courts are more competent, the query seems to focus on whether a judge in one system is more qualified to decide these issues than a judge in another. Of course, that is not the relevant inquiry at all. Moreover, we must not lose sight of the fact that in this case the challenged conduct indeed happened to be a *federal* constitutional violation. We are charged with the responsibility of providing an appropriate forum for the fair and efficient resolution of constitutional claims. I believe further discussion is unnecessary because of the thoroughness of Judge Ward's well-reasoned opinion.

1. More accurately, the majority has put its imprimatur on the district court's premature release of the prisoner on bail pending appeal *before* an opportunity was afforded this Court to review the district court's decision on the merits.

conviction, after a jury trial in the Queens County Supreme Court in 1968, was affirmed on direct appeal by the Appellate Division, Second Department, 37 A.D.2d 863, 326 N.Y.S.2d 995 (2nd Dept. 1971), and by the New York Court of Appeals. 31 N.Y.2d 888, 340 N.Y.S.2d 405, 292 N.E.2d 674 (1972).

The majority concedes that the federal constitutional claim raised in petitioner's federal habeas corpus petition was not even raised on his direct appeals to the New York state appellate courts; nor have the New York state appellate courts ruled on the merits of that claim on the appeals from the denial of petitioner's collateral attack upon his conviction.

Since there is no basis whatsoever in this record to overturn the felony murder conviction and since I believe that the principles of federalism and comity behind the Congressional requirement of exhaustion of state remedies embodied in 28 U.S.C. § 2254(b) and (c) (1976) are seriously undermined by the result reached today by the majority, despite the majority's thoughtful, well crafted opinion, I respectfully but emphatically dissent.

I.

On the afternoon of February 23, 1967—14 years prior to the argument of the instant appeal in our Court—Mrs. Diana Goodman was stabbed to death in her home. It is undisputed that either petitioner Klein or his co-defendant Rabinowitz killed Mrs. Goodman. They had gone together to her home to obtain money.

I question the propriety of a single district judge releasing on bail pending appeal a state prisoner serving a life sentence for murder following his conviction by a jury of 12—a conviction and sentence which 13 state judges have refused to set aside, including all of the judges of the highest New York state court. This is precisely the sort of action by a single federal trial court judge which was criticized by Chief Judge Lawrence H. Cooke of the New York Court of Appeals in his Sonnet Memorial Lecture at the Fordham University School of Law on February 24, 1981. Cooke, *Waste Not, Wait Not—A Consideration Of Federal And State Jurisdiction*, 49 Fordham L.Rev. 895, 900 (1981) ("The most incessant abrader of judicial feelings may be the overturn of the deliberative judgment of the highest court of a state by a single federal trial court judge.").

The situation confronting our Court as the result of the district court's release of this prisoner before the State could be heard on appeal is exacerbated by the absence of any findings by the district court justifying such release and the absence of any transcript of the hearing, if there was one, on the bail motion. For aught that appears in the record before us, there is nothing whatsoever to justify the extraordinary action of a single district judge in releasing on bail pending appeal a prisoner serving a life sentence for murder and doing so *before* appellate review of the district court's action. I had thought that such action by a district judge had been proscribed long ago by our Court. *See United States ex rel. Brown v. Smith*, 306 F.2d 596, 606 (2 Cir. 1962), *rev'g* 200 F.Supp. 885, 941–43 (D.Vt.1962) (Timbers, J.), *cert. denied*, 372 U.S. 959 (1963).

All else aside in this case, I would order immediately that the prisoner be remanded to custody until appellate review of the district court's order is completed—including review by the Supreme Court in the event that Court chooses to review the case.

After the opinions were filed in the instant case, we were informed that an Assistant State Attorney General had interposed no objection to the release of the prisoner on bail pending appeal. Leaving aside the dubious propriety of such a position by the State with respect to a prisoner serving a life sentence for murder, that fact is one which the district court appropriately might have set forth in its findings in support of its order granting bail and then have stayed such order until our Court might have had an opportunity to review the district court's exercise of discretion with respect to granting bail pending appeal. Clearly the premature release of this prisoner on bail pending appeal is contrary not only to the practice in this Circuit but to the practice in other Circuits as well. See, e.g., the opinion by Circuit Judge Bailey Aldrich in *Glynn v. Donnelly*, 470 F.2d 95, 98 (1 Cir. 1972):

> "[I]n the absence of exceptional circumstances ... the court [in a state prisoner habeas corpus case] will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, ... but a clear, and readily evident, case on the facts. Merely to find that there is a substantial question is far from enough." (footnote omitted).

The three separate opinions by our Court in the instant case, to say nothing of the State's pending petition for a writ of certiorari, would suggest that this is a case where the prisoner presented neither "a clear case on the law" nor a "clear, and readily evident, case on the facts."

Klein was indicted for premeditated murder and felony murder.[2] He was convicted, after a jury trial, of second degree murder and felony murder, for which he was sentenced, respectively, to terms of 15 years to life and 20 years to life, the terms to run concurrently.

It is further undisputed that on three occasions after his arrest and before trial Klein admitted to police officers and an assistant district attorney that he had accompanied Rabinowitz to the Goodman home and that he was either present or in an adjoining room at the time of the murder. Klein repeated these admissions during his trial testimony.

Klein's trial counsel, as the majority points out, virtually conceded in his summation to the jury that Klein was guilty of felony murder. This concession is not surprising for the simple reason that, upon the undisputed facts disclosed by the record, there was no defense whatsoever to the felony murder charge.

Before returning to what strikes me as the extraordinarily slender reed upon which the majority relies in overturning Klein's felony murder conviction, I shall turn first to my disagreement with the majority's holding that Klein has exhausted state remedies.

## II.

I take it to be common ground that the Congressional command of exhaustion of state remedies, 28 U.S.C. § 2254(b) and (c) (1976), is not a matter of semantics to which only lip service is to be given; it cuts to the core of every state prisoner federal habeas corpus petition. Strict adherence to the statutory requirement has been emphasized by the Supreme Court and by our Court over and over again. E.g., *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *Krische v. Smith*, 662 F.2d 177, 177–78 (2 Cir. 1981); *Daye v. Attorney General*, 663 F.2d 1155, 1156–58 (2 Cir. 1981); *Boothe v. Superintendent*, 656 F.2d 27, 31–32 (2 Cir. 1981); *Rivera v. Harris*, 643 F.2d 86, 91 n.3 (2 Cir.), rev'd, —— U.S. —— (1981), 50 U.S.L.W. 3484 (U.S. Dec. 14, 1981), see N.Y.L.J., Dec. 15, 1981, p. 1, cols. 2–3; *Albuquerque v. Bara*, 628 F.2d 767, 774 (2 Cir. 1980); *Gayle v. LeFevre*, 613 F.2d 21, 22 & n.1 (2 Cir.

1980); *Twitty v. Smith*, 614 F.2d 325, 331 (2 Cir. 1979); *Finetti v. Harris*, 609 F.2d 594, 597 (2 Cir. 1979); *Johnson v. Metz*, 609 F.2d 1052, 1053–56 (2 Cir. 1979); *Kaplan v. Bombard*, 573 F.2d 708, 710–11 & n.1 (2 Cir. 1978); *Wilson v. Fogg*, 571 F.2d 91, 93 (2 Cir. 1978); *Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2 Cir. 1977); *Cameron v. Fastoff*, 543 F.2d 971, 977 (2 Cir. 1976); *Lunz v. Henderson*, 533 F.2d 1322, 1324 & n.3 (2 Cir.), cert. denied, 429 U.S. 849 (1976); *United States ex rel. Johnson v. Vincent*, 507 F.2d 1309, 1311 (2 Cir. 1974), cert. denied, 420 U.S. 994 (1975); *Ralls v. Manson*, 503 F.2d 491, 494–95 (2 Cir. 1974); *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991, 994 (2 Cir. 1974); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1124 (2 Cir.), cert. denied, 409 U.S. 1045 (1972); *United States ex rel. Rogers v. LaVallee*, 463 F.2d 185, 187 (2 Cir. 1972); *United States ex rel. Annunziato v. Deegan*, 440 F.2d 304, 305 & n.1 (2 Cir. 1971); *United States ex rel. Gentile v. Mancusi*, 426 F.2d 238, 240 (2 Cir.), cert. denied, 400 U.S. 944 (1970); and *United States ex rel. Wissenfeld v. Wilkins*, 281 F.2d 707, 710 (2 Cir. 1960).

The requirement that "a state prisoner . . . present the state courts with the same claim he urges upon the federal courts" and give the state courts a "fair opportunity" to consider that federal constitutional claim, *Picard, supra*, 404 U.S. at 276, obviously presupposes that the claim be articulated in the state courts with some precision. The claim must be framed with sufficient specificity in the state courts to permit the federal courts thereafter to determine whether the particular claim is the same claim or "substantially the same" as the one previously asserted in the state courts. *Fielding, supra*, 548 F.2d at 1107. Only in this way may the federal courts determine whether the state courts indeed had a "fair opportunity" to decide the claim on its merits. General references in state court briefs to "due process", "constitutional rights", and "fair trial" are inadequate under this standard to exhaust state remedies for purposes of compliance with the Congressional mandate of § 2254. *Gayle, supra*, 613 F.2d at 22 n.2; *Johnson, supra*, 609 F.2d at 1055; *Wilson, supra*, 571 F.2d at 94; *Cameron, supra*, 543 F.2d at 977; *Gibbs, supra*, 496 F.2d at 994; *Nelson, supra*, 465 F.2d at

---

**2.** Rabinowitz pled guilty to first degree manslaughter. He was sentenced to a prison term of 10 to 20 years. He has completed serving his prison term.

1124; and *Anderson v. LeFevre*, 509 F.Supp. 199, 200 (S.D.N.Y.1981) (Ward, J.).

In the instant case, petitioner simply has not complied with the requirements of specificity and identity of claims in the state and federal courts. He raised a welter of alleged trial errors at every stage of his post-conviction proceedings. A careful reading of the state court record, and particularly of the state appellate and collateral proceeding briefs, however, makes crystal clear that under the standards set forth above petitioner has totally failed to present the "same claim" to the state and federal courts.

With respect to the challenged testimony of Klein's codefendant, Rabinowitz, Klein claimed error on the part of the trial judge at some stages of the proceedings, error by the prosecution at other stages, and error on the part of both at still other stages. At no time in the state courts, however, was any federal constitutional claim asserted with the requisite specificity.

The majority places chief reliance, in holding that petitioner has exhausted state remedies, upon his motion for post-conviction relief pursuant to N.Y. Criminal Procedure Law § 440.10 (McKinney 1971). I shall deal more explicitly below with what I regard as the majority's unfortunate departure from the law of this Circuit in its construction of this New York statute. For present purposes, however, suffice it to say that petitioner's § 440 motion may be characterized charitably as a hodge-podge of claims; and, to the extent that they challenge the Rabinowitz testimony, they fall fatally short of the requisite federal constitutional specificity required by the Supreme Court and by our Court.

In short, it is not enough that petitioner may have "unsuccessfully pursued numerous avenues toward post-conviction relief in the New York state courts", as the majority states. His pursuit must have been sufficient at law. It was not.

### III.

The majority further holds that petitioner's claim was not waived by his failure to object contemporaneously at trial or to raise it on direct appeal. It bases its analysis on its reading of *Wainwright v. Sykes*, 433 U.S. 72 (1977)[3]; *Washington v. Harris*,

650 F.2d 447 (2 Cir. 1981); and *Gruttola v. Hammock*, 639 F.2d 922, 929 (2 Cir. 1981). According to the majority, these cases require a determination of whether state procedural bars were invoked by the state courts. Such an interpretation, in my view, marks a significant departure from and expansion of our recent decisions on the issue. *Washington, supra*, 650 F.2d at 451; *Taylor v. Harris*, 640 F.2d 1, 2 (2 Cir. 1981); and *Alburquerque v. Bara*, 628 F.2d 767, 772–73 (2 Cir. 1980). Such an interpretation also misapprehends the policy behind a *Sykes*-type "waiver" in this Circuit.

According to the majority, unless a state court "actually relies" upon a state procedural default for its dismissal, the prosecution has forfeited its otherwise dispositive claim in the federal court that petitioner failed to make timely objection under state law and so now has not presented a cognizable federal claim. In other words, the majority has added to the *Sykes'* straightforward "cause and prejudice" test the prerequisite of an actual state court dismissal on procedural grounds—a requirement which was not met here and which seriously undercuts the holding of *Sykes.*

The import of the waiver rule, correctly applied, is that *petitioner* would be barred from presenting in a federal habeas proceeding a new claim which, under state procedure, must be raised prior to or during trial or on direct appeal. The import of the rule is *not* that *respondent* is barred from contesting the petition in the federal court because of the dismissal formulation utilized by the state court.

The majority's application of a two-tiered *Sykes* test, I respectfully submit, results in the upside down anomaly of screening out rebuttal claims by the state rather than untimely claims by state prisoners. On this further ground I therefore dissent.

### IV.

Returning to the majority's second test for determining whether there has been exhaustion of state remedies—namely, appellate exhaustion—I find the majority's glossing over this issue to be most unfortunate. In particular, I am disturbed by the manner in which the majority deals with petitioner's failure to seek review by the New York Court of Appeals of the denial

---

**3.** The majority refers to *Sykes* as "the latest in a line of not entirely consistent Supreme Court cases dealing with the forfeiture question."

by the Appellate Division of leave to appeal from the denial by the Queens County Supreme Court of petitioner's motion for post-conviction relief pursuant to N.Y. Criminal Procedure Law § 440.10(2)(c) (McKinney 1971). I am especially disturbed by the majority's departure from the law of this Circuit in construing this statute—a departure which is aggravated by the conceded failure of petitioner ever to have raised on his direct appeals to the New York state appellate courts the federal constitutional claim raised in his federal habeas corpus petition.

The late Judge Murray I. Gurfein was an exceedingly wise and perceptive judge. His long experience on this Court, on the district court, and as a prosecutor and defense attorney in the New York state courts instilled in him a sensitivity second to none regarding the principles of federalism and comity behind the Congressional requirement of exhaustion of state remedies embodied in 28 U.S.C. § 2254(b) and (c) (1976). Judge Gurfein was a member of the panel in the two leading cases in our Court dealing with § 440.10(2)(c) and particularly with the critical question of whether the *state courts* or the *federal courts* should determine in the first instance what constitutes "unjustifiable failure" to raise on direct appeal an issue later sought to be raised in seeking post-conviction relief. *Johnson v. Metz*, 609 F.2d 1052, 1055–56 (2 Cir. 1979); *Cameron v. Fastoff*, 543 F.2d 971, 977–78 & n.7 (2 Cir. 1976). What Judge Gurfein, the author of the opinion in *Johnson v. Metz*, said in emphasizing the role of the *state courts* in making this critical determination bears repetition:

> "*The meaning of 'unjustifiable failure' has not yet been determined by the court of appeals nor has that court stated whether it would limit post-conviction relief in a case involving a claim of unfair trial.* Nor has there been any definitive determination of whether state habeas corpus survives as a post-conviction remedy. *Despite this uncertainty, we have taken the position ... that whether New York entertains collateral relief at this point is a matter of New York law to be*

*decided by the New York courts. Wilson v. Fogg, supra,* 571 F.2d at 95, citing *Cameron v. Fastoff, supra,* 543 F.2d at 977–78 & n.7. *It is difficult for this panel to believe, however, that no post-conviction remedy whatever will be available by way of state collateral relief when a serious federal constitutional issue is involved.*

> "*... Particularly because of the lack of authority, we think it appropriate that the state court should be allowed, in the first instance, to pass on the constitutional point fairly presented to it.*" 609 F.2d at 1056 (footnote omitted; emphasis added).

Despite what clearly is the law of this Circuit, *Johnson, supra,* 609 F.2d at 1055–56; *Cameron, supra,* 543 F.2d at 977–78 & n.7—namely, that we defer to the *state courts* to determine what constitutes an "unjustifiable failure" for the purpose of triggering § 440.10 relief—the majority here peremptorily holds as a matter of New York law that "no appeal to the New York Court of Appeals lies from an order denying a motion for leave to appeal to the Appellate Division." Acknowledging that it has found no New York Court of Appeals decision to this effect, the majority boot-straps its peremptory holding with respect to New York law by going outside the record in the instant case and alluding to a letter from a court clerk in a case not before us.

With deference, I suggest that it would be well to heed the recent admonition of Chief Judge Cooke of the New York Court of Appeals:

> "We can ill afford unnecessary duplication of judicial effort. We are haunted by the specter of criminal cases that run the full gamut of state trial and appellate levels only to start anew up the ladder of federal courts and then perhaps somewhere along the line return to the beginning of the obstacle course. The process may take many years."

Cooke, *Waste Not, Wait Not—A Consideration of Federal and State Jurisdiction,* 49 Fordham L.Rev. 895, 901–02 (1981).

## V.

Finally, in overturning Klein's felony murder conviction—wholly aside from the failure to exhaust state remedies—it seems to me that the majority improperly has ventured into an area where there not only is no claim of federal constitutional significance but no state court error whatsoever.

The state trial court carefully instructed the jury to return two verdicts. The verdict convicting petitioner of felony murder reflected the jury's determination that petitioner "[a]cting either alone or with one or more other persons" engaged in or attempted one of the predicate felonies set out in the statute and that, "in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant ... cause[d] the death of a person other than one of the participants...." N.Y. Penal Law § 125.25(3) (McKinney 1975). The statute does not require an answer to the question as to who, between Klein and Rabinowitz, used the knife to stab Mrs. Goodman to death.

Even if this Court were correct in sustaining petitioner's arguments on the merits and in holding that the trial judge should have striken Rabinowitz's disputed testimony on the premeditated murder count, there remains the abundant and virtually undisputed evidence of Klein's willing participation in the criminal excursion to Mrs. Goodman's home and in the murder that ensued there. Of chief significance, petitioner's own admissions to the police, given on three occasions, the admissibility of which is not disputed, squarely inculpate petitioner on the felony murder count. The majority's suggestion of "spillover", aside from being speculative and without foundation in this record, is wholly misplaced under the circumstances of this case where petitioner's trial counsel conceded in his summation that petitioner was guilty of felony murder.

For the reasons stated above, I would vacate the judgment of the district court. From the refusal of the majority to do so, I respectfully but emphatically dissent.[4]

---

4. The characteristically thoughtful concurring opinion of Judge Kaufman, written of course after my dissenting opinion, serves the useful purpose of further sharpening the essential questions in the case. Why are the New York state courts not just as competent as the federal courts to pass upon the conduct of the state trial judge, assuming the correctness of Judge Kaufman's characterization of that conduct as "of the most serious constitutional dimension"? And why are not the New York state courts far more competent than the federal courts to say whether the conduct of the state trial judge should result in overturning the conviction on the felony murder count, as to which the defendant's state trial counsel conceded guilt? The silence of our distinguished concurring colleague with respect to these essential questions strikes me as significantly eloquent.