**Dean SHENDAL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17917.**

United States Court of Appeals Ninth Circuit.

Jan. 7, 1963.

Wyman, Finell & Rothman, Frank Rothman and Gerald M. Bazar, Beverly Hills, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Timothy M. Thornton, Asst. U. S. Atty., Chief, Special Prosecutions Section, and Benjamin S. Farber, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, STEPHENS and BARNES, Circuit Judges.

CHAMBERS, Circuit Judge.

As a witness before a federal grand jury in Los Angeles, Shendal has refused to answer these two questions:

1. "How much money was involved; how much money?"

2. "Who was the individual up there in Chicago?"

In context it would appear, as Shendal had testified, he was the manager of the slot machines at the Sands hotel at Las Vegas, Nevada. But he had done some special assignments for the gambling management. Particularly, probably in the month of February, 1962, he had gone to Chicago to make a "collection." Without objection, Shendal told of making the trip to Chicago, who sent him, that he did receive money there in a sealed envelope from an individual.

As to the two specific questions, Shendal invoked the Fifth Amendment: that the answers would incriminate him or tend to incriminate him. There is no question but that there was adequate direction and refusal to answer.

The trial judge was of the opinion that the matter of incrimination was nonsense and that it was transparent from Shendal's answers that he was trying to protect someone else. It would also appear the trial court thought the witness had answered so much that there was a waiver of any claim of privilege against self-incrimination. In an effort to get answers, the trial court invoked a civil contempt sanction and ordered Shendal confined to jail until he should answer. This court, pending appeal, admitted Shendal to bail.

As men, we strongly suspect the trial judge's hunch was right: that Shendal was protecting a third party. And, we might add that the fear in his mind was more likely to have been that of physical violence at the hand of third parties than anything at the hands of the law. But as judges we can't say such was a fact.

Here the government was apparently working up to some sort of an indictment under its new statute, 18 U.S.C. § 1952 passed as Public Law 87–228, 75 Stat. 498.

There is little doubt that the law under the Fifth Amendment is moving toward a more liberal position in favor of the witness. Of course, the leading modern case is Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. That case, in effect, holds that the claim of privilege is good unless the court can find that any prospective answer could not possibly incriminate or form a link in the chain.

To get the full sweep of the Hoffman decision, one has to examine Simpson v. United States, 355 U.S. 7, 78 S.Ct. 14, 2 L.Ed.2d 22, reversing Simpson v. United States, 9 Cir., 241 F.2d 222; Wollam v. United States, 9 Cir., 244 F.2d 212; and MacKenzie v. United States, 9 Cir., 244 F.2d 712. Such an examination should include our decisions, supra, and the actual records to see how tenuous in the three cases is the possibility of incrimi-

nation or the production of the "link in the chain." Yet the solicitor general in 1957 confessed error and the Supreme Court endorsed the confession. Neither the government nor Shendal's counsel cited Simpson to the trial court here, and it was necessary for this court to call it to the attention of the parties. And, when this was done, the government advised that now it would only press the first question: "How much money was involved; how much money?" On this point, apparently the solicitor general is prepared to try to support the district court's decision. But it is not as simple as the district attorney argues when he says: "[I]f there was any incrimination at all, he had (the witness) already incriminated himself by his answer that he was carrying money across state lines." "How much" may well prove the link of the chain connecting Shendal to some direct or conspiracy crime tied to the commerce clause of the Constitution by legislation or some federal tax offense.

There is some good argument that Shendal went so far that under Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 306, he has waived his privilege. We can follow the conclusion that the answer in Rogers would not further incriminate the witness, but here, we repeat, in Shendal it might provide a link not already provided.

Further, we might say that being bound by Simpson and Hoffman, it is tempting to avoid their effect by embracing "waiver." But we do not think we should. Such compensation puts counsel for witnesses in a dilemma. They have to advise witnesses to claim the privilege before there is, in their own minds, any reason to claim the privilege. Such a judicial policy puts counsel in the position of being told, "The joke is on you. You let your client go too far." Once granted that the area of the question is within the Fifth Amendment, short of being ridiculous, it would appear wiser to let the witness pick the point beyond which he will not go.

Believing that Hoffman, as extended by Simpson and followed in our case of Hashagen v. United States, 9 Cir., 283 F.2d 345, 349, covers this case, the order of the district court is reversed.