The case is remanded for further proceedings consistent with this opinion.

**In the Matter of Jerry SEPER, Non-Party Witness.**

**UNITED LIQUOR COMPANY, Plaintiff,**

v.

**Gary GARD and Ira John Doe, Defendants.**

**UNITED LIQUOR COMPANY, Plaintiff-Appellant,**

v.

**Jerry SEPER, Witness-Appellee.**

No. 82–5772.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 8, 1983.

Decided May 17, 1983.

**1500**

James Powers, Nancy J. Beck, Fennemore, Craig, vonAmmon, Udall & Powers, Phoenix, Ariz., for plaintiff-appellant.

James P. Loss, Asst. U.S. Atty., James F. Henderson, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., S. Martin Teel, Jr., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Dept. of Justice, Washington, D.C., for witness-appellee.

Before CANBY and NORRIS, Circuit Judges and LUCAS,* District Judge.

---

\* Honorable Malcolm Lucas, United States District Judge, for the Central District of California, sitting by designation.

1. § 7217. *Civil damages for unauthorized disclosure of returns and return information.*

    (a) *General rule.* Whenever any person knowingly, or by reason of negligence, discloses a return or return information (as defined in section 6103(b)) with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages against such person, and the district courts of the United States shall have jurisdiction of any action commenced under the provisions of this section.

    (b) *No liability for good faith but erroneous interpretation.* No liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103.

    (c) *Damages.* In any suit brought under the provisions of subsection (a), upon a finding of liability on the part of the defendant, the

**CANBY, Circuit Judge:**

United Liquor Company (United) appeals a summary judgment dismissing its complaint. United argues that the district court erroneously deprived it of critical evidence by upholding witness Jerry Seper's claim of fifth amendment privilege. We affirm.

## FACTS

Internal Revenue agent Gary Gard supervised an audit of United. In December 1978, two stories in a Phoenix newspaper reported some details of the federal investigation. Both stories were written by reporter Jerry Seper; the first was based on information obtained from an unidentified I.R.S. agent, the second on "a source close to the I.R.S. probe."

United sued Gard and a fictitious defendant for damages under 26 U.S.C. § 7217,[1] which creates a private right of action against any official who unlawfully discloses confidential information from tax returns. In preparation for the Gard trial, United deposed reporter Seper as a non-party witness. Seper testified that he had based the first story on information obtained from two I.R.S. agents. He refused to identify these agents, although he stated

defendant shall be liable to the plaintiff in an amount equal to the sum of—

    (1) actual damages sustained by the plaintiff as a result of the unauthorized disclosure of the return or return information and, in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, but in no case shall a plaintiff entitled to recovery receive less than the sum of $1,000 with respect to each instance of such unauthorized disclosure; and

    (2) the costs of the action.

    (d) *Period for bringing action.* An action to enforce any liability created under this section may be brought, without regard to the amount in controversy, within two years from the date on which the cause of action arises or at any time within two years after discovery by the plaintiff of the unauthorized disclosure.

(Added Act Oct. 4, 1976, P.L. 94-455, Title XII, § 1202(e)(1), 90 Stat. 1687; Nov. 6, 1978, P.L. 95 600, Title VII, § 701(bb)(7), 92 Stat. 2923.)

that Gard was not the source. Ultimately, Seper argued that his refusal to testify was privileged under the fifth and first amendments.

The district judge upheld Seper's privilege under the fifth amendment. Without Seper's testimony, United was unable to identify the sources, and so the court granted summary judgment in favor of all defendants. United appeals.

## FIFTH AMENDMENT

Seper contends that disclosure of his sources would incriminate him under 26 U.S.C. § 7213(a)(3). That section provides:

(3) *Other persons.* It shall be unlawful for any person to whom any return or return information (as defined in section 6103(b)) is disclosed in a manner unauthorized by this title thereafter willfully to print or publish in any manner not provided by law any such return or return information. Any violation of this paragraph shall be a felony punishable by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution.

The fifth amendment may be invoked in a civil proceeding. *Maness v. Meyers,* 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574 (1975); *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).

United argues that under *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), Seper has "waived" the privilege by admitting incriminating facts. In *Rogers,* a witness was before a grand jury investigating the communist party. She testified that she had been the party treasurer and had been in possession of party records. She refused, however, to disclose to whom she had given the records. *Id.* at 368, 71 S.Ct. at 439. The Court stated:

Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to the specific question in issue

here would not further incriminate her .... Following this rule, federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details.

*Id.* at 372–73, 71 S.Ct. at 441–42. The issue here is whether Seper was withholding mere "details" or evidence which would "further incriminate" him.

■ Our own cases provide considerable help in making this troublesome distinction. In *Hashagen v. United States,* 283 F.2d 345 (9th Cir.1960), we concluded that

the touchstone in *Rogers,* is the adjective "further," and thus an admission of a criminating fact may waive the privilege as to the details of that fact so long as they do not *further* incriminate, but where those details would so incriminate, the privilege is not waived.

*Id.* at 352. *Accord, United States v. Seifert,* 648 F.2d 557, 561 (9th Cir.1980). The privilege against self-incrimination does not depend upon the *likelihood,* but upon the *possibility* of prosecution." *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir.1974). "Further incrimination" includes testimony that is not directly incriminating if it might supply a "link" in a necessary chain of evidence. *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951); *Shendal v. United States,* 312 F.2d 564, 566 (9th Cir.1963). Furthermore, the privilege is available if answers "could possibly" supply such a link. *In re Master Key Litigation,* 507 F.2d at 294 (emphasis in original).

■ Finally, we note that in this circuit the witness has considerable latitude in deciding when to stop responding to questions. A contrary rule would involve the witness in a dilemma that would vitiate the privilege: invoking the privilege too soon could be contempt of court, while invoking it too late would inadvertently "waive" the privilege. Thus, "granted that the area of the question is within the fifth amendment, short of being ridiculous, it would appear wiser to let the witness pick the point be-

yond which he will not go." *Shendal v. United States*, 312 F.2d 564, 566 (9th Cir. 1963).

■ United argues that Seper has already disclosed enough to incriminate himself under 26 U.S.C. § 7213(a)(3), and that the names of his sources are mere details. Certainly, Seper's testimony could provide a basis to charge him under section 7214. Conviction, however, would be far from certain. To convict Seper, the government would have to prove that the disclosure to Seper was "unauthorized," and that Seper "willfully" published the information. Proof that the disclosure was unauthorized obviously would be more difficult if his sources remain undisclosed. In addition, to prove willfulness, the government probably must show that Seper *knew* that the information was disclosed to him in violation of the law. S.Rep. No. 94–938, 94th Cong., 2d Sess, 341, 348, *reprinted in* [1976] U.S.Code Cong. & Ad.News 3437, 3777. Nothing in Seper's previous testimony supplies these two essential elements.

We have little difficulty in concluding that disclosure of Seper's sources would further incriminate him by providing links in the essential chain of proof. Because his chosen stopping place was not "ridiculous," the district court was correct in ruling that Seper could assert the fifth amendment privilege. That ruling is sufficient to support the judgment. Accordingly, we do not address Seper's first amendment claims.

AFFIRMED.