**In re Jerry H. MUDD, Debtor.**

**Bankruptcy No. 387–34485–HCA–7.**
**Adv. No. 388–3372.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 24, 1989.

---

quested by the Trustee. The issue presented concerns whether the Debtor waived the right to assert his Fifth Amendment privilege against self-incrimination by testifying at several prior Section 341 meetings and Bankruptcy Rule 2004 examinations as to the same or similar subjects which the Trustee wished to address in the Bankruptcy Rule 2004 examination in question.

After considering the briefs and pleadings, and reviewing the applicable authorities, the Court finds that the Debtor has waived the right to raise his Fifth Amendment privilege as to the details of facts he disclosed in his previous testimony. The Debtor may not refuse to answer more specific questions on these subjects, unless his answers would pose a real danger of further incrimination or expose him to new areas of incrimination. The Court also finds the Fifth Amendment privilege against self incrimination inapplicable to the documents requested by the Trustee. Therefore, the Debtor is ordered to produce the documents. The Court declines to impose the sanctions requested by the Trustee in his Motion for Sanctions, believing that such action would be premature. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

George H. Tarpley, Sheinfeld, Maley & Kay, Dallas, Tex., for debtor/defendant.

Kenneth Stohner, Jr., Fielder F. Nelms, Jackson & Walker, Dallas, Tex., for John H. Litzler, trustee, plaintiff.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for consideration, Trustee's Motion for Sanctions and to Strike Pleadings and Motion for Continuance ("Motion for Sanctions") wherein the Trustee asked the Court to impose sanctions against Mr. Jerry H. Mudd ("Debtor") under Federal Rule of Civil Procedure 37 because the Debtor, asserting his Fifth Amendment privilege against self-incrimination, refused to testify at a scheduled Bankruptcy Rule 2004 examination, or to produce documents re-

## FINDINGS OF FACT

1. On September 25, 1987, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. Mr. John H. Litzler was appointed as Trustee ("Trustee") on November 2, 1987, pursuant to 11 U.S.C. § 1104. On February 8, 1988, the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the United States Bankruptcy Code.

2. At the initial Section 341 meeting, the Debtor appeared and on the advice of counsel, refused to answer all questions, invoking his privilege against self-incrimination under the Fifth Amendment of the United States Constitution. Thereafter, the Debtor appeared and testified at five Bankruptcy Rule 2004 examinations ("2004 examinations") on: October 29, 1987, October 30, 1987, November 11, 1987, November 12, 1987, and December 29, 1987. The

Debtor also testified at later Section 341 meetings. The transcripts of the five 2004 examinations were admitted into evidence on September 13, 1988, at the hearing on the present Motion.

3. At the first 2004 examination, both criminal and bankruptcy counsel represented the Debtor. The Debtor's criminal counsel, Mr. Arch C. McColl III, stated "...I have advised [the Debtor] that he has a Fifth Amendment right to assert if he wishes to do so and after consultation with me he has elected not to assert that right and be fully cooperative and produce records through me and fully testify to all questions asked of him." Transcript of 2004 Examination of October 29 and 30, 1987 at 8.

4. On May 26, 1988, the Trustee filed his Trustee's Complaint Objecting to Discharge Under 11 U.S.C. § 727, in which the Trustee objected to the Debtor's discharge because the Debtor had failed to produce records concerning, or to adequately explain, the loss of approximately $9,000,000.00 from two bank accounts referred to as the liquid asset fund ("Liquid Asset Fund" or "Fund").

5. On August 29, 1988 this Court signed an Agreed Order To Appear For 2004 Examination, in which the Debtor agreed to appear at a 2004 examination on August 31, 1988 and to produce, at that time, all documents requested by the Trustee.

6. The scope of the August 31, 1988, 2004 Examination was limited to matters involved in the Trustee's objection to discharge and in his objection to the claim of a house located at Timberhollow Circle in Dallas, Texas ("Timberhollow Property") as the Debtor's exempt homestead. Essentially, the purpose of the examination was to determine the knowledge of the Debtor as to all transactions concerning the Liquid Asset Fund, the funds used to make payments on the Timberhollow Property, and certain personal property allegedly removed from the Timberhollow Property.

7. Upon appearing at the August 31, 1988 2004 examination, the Debtor raised his Fifth Amendment privilege against self-incrimination, and refused to answer any question posed by the Trustee. For the same reasons, the Debtor also refused to answer interrogatories and to produce documents requested by the Trustee.

8. The transcripts of the Debtor's testimony at the five earlier 2004 examinations reveal that the Debtor testified extensively concerning the Liquid Asset Fund, the activities involved in maintaining the Fund, the fact that his employees kept records of funds withdrawn and checks sent to various investors, and his beliefs as to the eventual fate of the Fund.

9. At the time briefs were filed on the present Motion for Sanctions, two felony indictments were pending against the Debtor in Criminal District Court of Dallas, Dallas County, Texas, concerning missing investor funds.

## CONTENTIONS OF THE PARTIES

The Trustee has alleged in both his dischargeability complaint and in his Motion for Sanctions that the Debtor has failed to account for monies missing from the Liquid Asset Fund maintained by the Debtor. In addition, the Trustee claims that the Debtor knowingly and fraudulently made a false oath when he testified that he had no knowledge of the Liquid Asset Fund being paid to persons other than investors, when in fact bank records indicated that, between 1986 and 1987, over $2,000,000.00 was transferred from the Liquid Asset Fund to the Debtor's personal bank accounts and that, during that same time period, nearly $300,000.00 of the Fund was paid to other persons for the benefit of the Debtor. In his Motion For Sanctions, the Trustee contends that monies from the Liquid Asset Fund were transferred to the Debtor and may have been used to pay for the Timberhollow Property.

The Trustee wishes to question the Debtor further on these subjects. He contends that the Debtor's prior testimony concerning these matters waived his right to refuse to disclose further details on these topics.

The Debtor counters that he should be allowed to assert his privilege at this point

because additional criminal indictments are now pending against him and therefore he is in jeopardy of additional criminal action.

## DISCUSSION OF THE LAW

A. *The Effect of the Debtor's Prior Testimony on his Present Ability to Claim the Fifth Amendment Privilege Against Self–Incrimination*

Although the Fifth Amendment to the United States Constitution states that "[n]o person ...shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V., it is well settled that the privilege may be claimed in civil proceedings, including bankruptcy proceedings. *See McCarthy v. Arndstein*, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924). In fact, when a debtor has not been granted immunity from prosecution, the Bankruptcy Code specifically allows him to assert his Fifth Amendment privilege and retain his right to the discharge of his debts. 11 U.S.C. §§ 344 and 727(a)(6). The privilege protects an individual against compulsion to make any disclosure which he "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).

As is true with most Constitutional privileges, the privilege to refuse to testify may be waived either expressly or implicitly. While it would be simple enough to find that the statement made by the Debtor's attorney at the first 2004 examination was an express waiver of the Debtor's privilege, further thought on the subject indicates that the analysis for express and implied waiver should be almost identical because, logically, express waiver can only waive the privilege as to matters to which the witness actually testifies. Therefore, the Court believes that an analysis of implicit waiver is in order.

Implicit waiver or "testimonial waiver" of the privilege against self-incrimination will be "inferred from a witness' prior statements with respect to the subject matter of the case." *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir.1981). Testimonial waiver

is not to be lightly inferred. Accordingly, the courts must indulge every reasonable presumption against such a finding. *Klein*, 667 F.2d at 287, (citing *Smith v. United States*, 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949); *Emspak v. United States*, 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955); and *United States v. O'Henry's Filmworks, Inc.*, 598 F.2d 313, 318–19 (2d Cir.1979)).

*Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), is often described as the leading case on testimonial waiver. The *Rogers* Court found that the defendant waived her Fifth Amendment privilege by testifying that she had been the treasurer of the Communist Party of Denver and that she formerly possessed membership lists and dues records of the party. In affirming a finding of contempt against the witness for later refusing to identify the person to whom she had given the records on Fifth Amendment grounds, the Court stated that "...federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of details." *Id.* at 373, 71 S.Ct. at 442 (citing *United States v. St. Pierre*, 132 F.2d 837 (2d Cir.1942); and *Buckeye Powder Co. v. Hazard Powder Co.*, 205 F. 827 (D.C.Conn.1913)). The Court added, "[t]o uphold a claim of privilege in this case would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony." *Rogers*, 340 U.S. at 371, 71 S.Ct. at 441.

Perhaps because the test set out in *Rogers* is somewhat indefinite, the Second Circuit promulgated a two prong test for testimonial waiver in *Klein v. Harris*, 667 F.2d at 287–88, which has been adopted by several Bankruptcy Courts. *See example In re Hulon*, 92 B.R. 670 (Bankr.N.D.Tex. 1988); *In re Connelly*, 59 B.R. 421 (Bankr. N.D.Ill.1986); and *In re Candor Diamond Corp.*, 42 B.R. 916 (S.D.N.Y.1984). In *Klein* the court found that

a court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements

have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

667 F.2d at 287.

■ With these principles in mind, we now discuss the question presented. Applying the first prong of the test, the Debtor has testified extensively as to many of the matters on which the Trustee wishes to question him further. Prior to testifying at the first 2004 examination, the Debtor's criminal counsel stated that the Debtor was fully aware of his Fifth Amendment privilege and did not wish to assert it. Furthermore, when the Debtor testified, he was accompanied by criminal counsel, therefore, he must have been fully aware of the possibility of criminal prosecution from the events which were the subject of his testimony. The Court is now left with the statements made by the Debtor, and is thus prone to rely on these statements which the Trustee claims portray a distorted view of the truth.

The application of the first prong of the testimonial waiver test is aided by an understanding of its purpose. The first prong stems from *United States v. St. Pierre*, 132 F.2d 837 (2d Cir.1942), *cert. dismissed*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1942), where Judge Learned Hand wrote:

> It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition. The time for a witness to protect himself is when the decision is first presented to him; he needs *nothing more*, and *anything more* puts a mischievous instrument at his disposal.

*Id.* at 840.

The Trustee has had an opportunity to analyze the Debtor's testimony and study the documents which the Debtor had earlier produced. The Trustee now believes the Debtor's testimony was misleading. To allow the Debtor to plead a blanket Fifth Amendment privilege at this point and refuse to answer any further questions on the subjects covered in his earlier testimony would allow the Debtor to prematurely close the door which he freely opened. The law, however, does not permit a witness to open the door just wide enough to offer the Court an impaired view of the facts. Once the witness voluntarily opens the door, the Court may open it completely, and scrutinize every exposed matter. For these reasons, the Court finds that the first prong of the *Klein* test has been met.

Turning now to the second prong of the test, the Court must determine whether the Debtor had reason to know that his prior statements would be interpreted as a waiver of his constitutional right. This second prong is met only if the witness' prior statements were:

> (a) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding, (cites omitted), and (b) "incriminating" meaning that they did not deal with matters "collateral" to the events surrounding the commission of the crime. (cites omitted).

*Klein*, 667 F.2d at 288.

It is obvious from the statements made by the Debtor's criminal counsel at the first 2004 examination that the Debtor's sworn testimony was given voluntarily, and with full knowledge of his constitutional privilege to refuse to testify on certain matters. The Debtor had every reason to know that his lawyer's statement would be interpreted as a waiver of his Fifth Amendment rights.

This Court also finds that the prior testimony occurred in the "same judicial proceeding". While it is true that the objection to discharge complaint is a separate adversary proceeding under Bankruptcy Rule 7001, the subject matter of the adversary—the loss of some $9,000,000.00 from the Liquid Asset Fund—is so interwoven with the main Bankruptcy proceeding that

the two proceedings are part and parcel of each other. This fact is illustrated by the scope of the 2004 examination in question, in which the Trustee seeks information concerning the missing funds (to further his prosecution of his discharge complaint), and information concerning the possibility that the missing funds were used to pay for the Debtor's homestead (to further the prosecution of his objection to the Debtor's claim of the homestead as exempt in the main bankruptcy proceeding).

In addition, the Court finds that the Debtor's prior statements were "incriminating" because they did not deal with matters collateral to the crimes with which the Debtor has been charged. The Debtor was asked direct questions, and testified extensively, concerning the Liquid Asset Fund, including how and why he originally started the Fund, his methods of soliciting investors in the Fund, his methods of record keeping and the eventual fate of the Fund.

For the foregoing reasons, the Court holds that the Debtor's prior testimony waived his Fifth Amendment privilege to refuse to testify as to the details of previously disclosed facts, *unless* revealing those details would further incriminate him or subject him to new areas of incrimination.[1] Before he may assert this Constitutional privilege, however, he must have cause to apprehend danger of self-incrimination from direct answers to specific questions posed by the Trustee, *In re Connelly*, 59 B.R. 421, 434 (Bankr.N.D.Ill.1986) (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)), and before he will be excused from answering that question, "some nexus between the risk of criminal conviction and the information requested must exist." *Martin–Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir.1980). If it is not "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered

might be dangerous because injurious disclosure could result," the Debtor bears the burden of tendering "...some credible reason why a response would pose a real danger of incrimination, not a remote and speculative possibility." *Id.*

B. *The Application of the Fifth Amendment Privilege Against Self-Incrimination to the Production of Documents*

■ Because the Fifth Amendment privilege against self-incrimination "protects a person only against being incriminated by his own compelled testimonial communications," *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976) (citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)), the Supreme Court has applied the privilege to the production of incriminating documents in two situations: (1) when the preparation of the documents was compelled by the State, and (2) when the documents were voluntarily prepared; however, the act of producing the documents would be incriminating because production would tacitly concede the existence of the documents, and the fact that they were in the possession and control of the witness. *See generally United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); and *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

In the present case, the Trustee has requested documents relating to: the Liquid Asset Fund; bank accounts maintained by the Debtor; the Debtor's businesses; the Debtor's assets; and funds used to purchase the property the Debtor claims as his homestead. The requested documents are the types of records that would be maintained in the ordinary course of business;

---

1. The Court would add at this point, that if the Debtor contends at any time during further 2004 examinations that he has not testified as to some particular subject about which the Trustee now wishes to question him, the Trustee will bear the burden of finding the prior testimony in the several hundred pages of transcripts, and pointing the testimony out to the Debtor and his counsel.

their preparation was not compelled, and their existence is a foregone conclusion. In fact, the Debtor has testified that many of these documents exist and he has previously produced many of them. Because it is not illegal to prepare or possess ordinary business records, there is no "realistic threat of incrimination" to the Debtor in compelling him to produce these documents. *Fisher*, 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12.

Even assuming that the Fifth Amendment privilege did apply to the production of these documents, the Court believes that the fact that the Debtor has previously produced many of the same type of documents now requested would force the Court to find that the privilege had been waived. The same principle must apply to prior document production that applies to prior testimony. The witness cannot claim the Fifth Amendment privilege against self-incrimination after he has produced only a sufficient number of documents to support his side of the story; he must claim the privilege from the outset or not claim it at all.

For the foregoing reasons, the Court finds that the production of the documents in question is not protected by the Fifth Amendment, and the Debtor is ordered to produce the requested documents.