**In re Gary James BLAN and Jayna Otwell Blan, Debtors.**

**Bankruptcy No. 98–71174–F.**

United States Bankruptcy Court,
W.D. Arkansas,
Fort Smith Division.

Sept. 23, 1999.

Ken Cowan, Robertson, Beasley, Cowan, & Ketcham, PLLC, for Nacogdoches County Hospital District, movant.

Stephen G. Hough, Hough & Hough, for Gary James Blan and Jayna Otwell Blan, debtors.

## ORDER DENYING MOTION TO DISMISS

ROBERT F. FUSSELL, Bankruptcy Judge.

### I. BACKGROUND

Pending before the Court is Nacogdoches County Hospital District's [Nacogdoches] February 5, 1999 Motion to Dismiss Voluntary Petition of Separate Debtor, Gary James Blan [the motion to dismiss]. Nacogdoches also has pending before this Court an adversary proceeding against the separate Debtor, Gary James Blan [Blan or the Debtor] styled "Nacogdoches County Hospital District v. Gary James Blan," AP No. 98–7070. In the adversary proceeding, Nacogdoches seeks a determination by this Court that the debt allegedly owed by Blan to Nacogdoches is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (false pretenses, false representation, or actual fraud) and § 523(a)(4) (fraud or defalcation while acting in fiduciary capacity, embezzlement, or larceny). Nacogdoches also has pending in Texas a civil suit styled "Nacogdoches County Hospital District v. Gary J. Blan, et al.", District Court of Nacogdoches County, Texas, 145th Judicial District, case number 13,873–97–11 [the Texas action]. The causes of action asserted by Nacogdoches against Blan and his codefendants in the Texas action include breach of fiduciary duty, fraud, conversion, civil conspiracy, breach of contract, and special liability of government employee. The Texas action was pending at the time the Debtors filed the above-captioned bankruptcy case on October 23, 1998. On April 2, 1999, this Court entered an order granting Nacogdoches relief from the automatic stay to pursue the Texas action. That decision was af-

firmed by the United States Bankruptcy Appellate Panel for the Eighth Circuit on August 30, 1999.

Nacogdoches contends in its pending motion to dismiss that the Blan's Chapter 7 bankruptcy case should be dismissed based upon his improper assertion of the Fifth Amendment privilege against self-incrimination in response to the questions posed to him by Nacogdoches at the January 18, 1999 Rule 2004 examination in this case. At the request of the parties, this matter was submitted to this Court for decision based upon the parties' May 7, 1999 Joint Stipulation of Exhibits and Facts. On August 26, 1999, and with the Court's permission, the parties filed an additional Joint Stipulation and the Court took the matter under advisement.

## II. *FINDINGS OF FACT*

The parties' May 7, 1999 joint stipulation states in relevant portion:

## I. *STIPULATIONS AS TO EXHIBITS*

The parties hereby stipulate to submission of the following exhibits in connection with the Court's consideration and determination of the Motion to Dismiss the Voluntary Petition as to the separate Debtor, Gary James Blan, filed by Movant, Nacogdoches County Hospital District:

A. Original Chapter 7 bankruptcy Petition filed by Gary James Blan and Jayna Otwell Blan, husband and wife, on October 23, 1998.

B. Amended Chapter 7 bankruptcy Petition filed by Gary James Blan and Jayna Otwell Blan, husband and wife, on November 6, 1998.

C. All schedules, amended schedules, declarations, or amended declarations of the Debtors, as well as all statements or amended statements of financial affairs filed by the Debtors in the above-styled Chapter 7 case.

D. Transcript of Section 341(a) first meeting of creditors held on Janu-

ary 11, 1999 in connection with Debtors' bankruptcy case.

E. Transcript of deposition/Rule 2004 examination of separate Debtor, Gary James Blan, taken on January 18, 1999.

F. Transcript of hearing before the Court on February 16, 1999, regarding the Motion for Relief from Stay filed by Movant, Nacogdoches County Hospital District, as to separate Debtor, Gary James Blan, and separate Debtor's response thereto, and including all exhibits introduced at such hearing.

## II. *STIPULATIONS OF FACT*

The parties submit the following stipulations of fact to supplement the above-mentioned stipulated exhibits:

A. Debtors, Gary James Blan and Jayna Otwell Blan, initiated their Chapter 7 bankruptcy case on October 23, 1998.

B. The Debtors' schedules list Nacogdoches Memorial Hospital on Schedule F as a "contingent disputed" claimant and list the amount of its claim as zero.

C. The Debtors' schedules and statement of affairs do not list any counterclaim of Gary James Blan against Nacogdoches County Hospital District as a claimed asset of the estate.

D. Debtors' Schedule F and their statement of affairs list, as an unsecured debt, the pending lawsuit against separate Debtor, Gary James Blan, filed by the Movant, Nacogdoches County Hospital District, in its Texas State Court action. Debtors' amended Schedule F lists Mr. Blan's co-defendants in the Texas State Court action as additional creditors herein.

E. Debtors, Gary James Ban and Jayna Otwell Blan, answered all inquiries or question contained within

the bankruptcy schedules, declarations, and statement of affairs submitted herein, and signed all such schedules, declarations, and statements.

F. Neither Debtor refused to answer any area of inquiry or question contained in the bankruptcy schedules, declarations, and statement of affairs, nor did either Debtor attempt to assert a Fifth Amendment privilege in response to any of the inquiries or questions contained therein.

G. At the meeting of creditors held on January 11, 1999, both Debtors answered various questions concerning the bankrupt estate posed to them by the Trustee, Ben T. Barry. Such questions answered by the Debtors included various standard questions asked by the Trustee of all debtors at Section 341(a) meetings, as well as various particular questions regarding sale of real property, receipt of proceeds, and payment of debts from such proceeds.

H. At the meeting of creditors, the separate Debtor, Gary James Blan, also answered certain questions of the Trustee regarding his counterclaim against Nacogdoches County Hospital District in the pending Texas State Court action. Mr. Blan asserted such counterclaim as an asset of the Debtors' estate at the meeting of creditors.

I. The separate Debtor, Gary James Blan, also answered a question of the Trustee concerning the allegations against him in the Texas State Court action. However, Mr. Blan asserted the Fifth Amendment privilege and refused to answer a further question at the meeting of creditors regarding purchases allegedly made by him and listed in the complaint filed by Nacogdoches County Hospital District.

J. Separate Debtor, Gary James Blan, was deposed by the Movant's attorneys on January 18, 1999. Such deposition was taken both for the purpose of examining the Debtor in detail with regard to the Petition, schedules, and statement of affairs, as well as to discover information from the Debtor in connection with the adversary proceeding filed against him by the Movant, Nacogdoches County Hospital District. Matters inquired of by the Debtor, Gary James Blan, during such deposition related to issues concerning administration of the Debtors' estate, as well as to issues concerning dischargeability of Mr. Blan's debt to the Movant/creditor, Nacogdoches County Hospital District.

K. Separate Debtor, Gary James Blan, answered only one (1) question posed to him during the deposition/Rule 2004 examination. Such question requested him to state his full name. In response to all other questions posed to him during the deposition, Mr. Blan responded as follows: "I assert my right under the Fifth Amendment of the constitution of the United States and refuse to answer that question."

L. Separate Debtor, Gary James Blan, did not seek immunity from examination or from giving testimony pursuant to the provisions of 11 U.S.C. § 344 or 18 U.S.C. § 6002 before asserting his claim of Fifth Amendment privilege against self-incrimination. Mr. Blan has not been granted immunity from answering any questions posed to him that he has refused to answer.

M. At hearing on February 16, 1999 concerning the Motion for relief from the stay filed by the Movant, Nacogdoches County Hospital District, as to separate Debtor, Gary James Blan, the Movant presented testimony and evidence in support

of its Motion. The Debtor, Mr. Blan, cross-examined the Movant's witness, but he did not present any testimony or evidence of his own. The Court, by Memorandum Opinion entered April 25, 1999, ruled that the Debtor, Gary James Blan, had failed to meet his burden of proof under 11 U.S.C. § 362(g) and therefore granted relief from the stay in favor of the Movant, Nacogdoches County Hospital District. The separate Debtor has since appealed such decision to the 8th Circuit Bankruptcy Appellate Panel.

On August 26, 1999 that parties filed an additional joint stipulation that states in relevant portion:

> The parties hereby stipulate that Gary James Blan received a letter from the United States Attorney for the Eastern District of Texas dated June 7, 1999. Said letter stated, among other things, "... that it is the intention of this office to initiate prosecution against you for violations of Title 18, United States Code, Section 1347, arising from allegations concerning your involvement in the defrauding of Nacogdoches Memorial Hospital while you served as its administrator."

The parties attached a copy of the letter as Exhibit "A" to the joint stipulation.

## III. CONCLUSIONS OF LAW

The issue before this Court is whether the Debtor's refusal to answer questions posed to him at the Rule 2004 examination constitutes "cause" for dismissing his case pursuant to section 707(a). Section 707(a) of the Bankruptcy Code provides in pertinent part:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28;

> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States Trustee.

11 U.S.C. § 707(a). Although the statute lists three justifications for dismissal, the legislative history specifically notes that "[t]hese causes are not exhaustive, but merely illustrative." H.R.Rep. No. 595, 95th Cong. 1st Sess. 1977 at 380 U.S.Code Cong. & Admin.News 1978 pp. 5963, 6336. *See also, Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829 (8th Cir.1994) (statutory list of factors constituting "cause" for dismissal of Chapter 7 case is nonexclusive).

Nacogdoches asserts that cause can be found in the Debtor's refusal to answer the questions posed to him at the Rule 2004 examination. Nacogdoches asserts that Blan's reliance upon the Fifth Amendment privilege against self-incrimination in refusing to answer questions was improper for two reasons. First, Nacogdoches contends that Blan failed to substantiate the reasons why responding to Nacogdoches' inquiries at the Rule 2004 examination would pose a real threat of incrimination. Second, Nacogdoches maintains that Blan effectively waived his right to assert the Fifth Amendment privilege against self-incrimination, at least as to certain issues, by filing a voluntary petition and schedules and by answering questions posed to him by the Chapter 7 trustee and Nacogdoches at the section 341 meeting of creditors.

### A. Assertion of the Privilege

The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself." The privilege protects an individual against compulsion to make any disclosure that he "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."

*Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal. . . ." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). An individual may assert this privilege against self-incrimination at any stage in a criminal or civil proceeding, including a bankruptcy proceeding. *See McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *Martin–Trigona v. Belford (In re Martin–Trigona)*, 732 F.2d 170, 175 (2d Cir.1984); *Charter Fed. Sav. Ass'n v. Rezak (In re Lederman)*, 140 B.R. 49, 52 (Bankr.E.D.N.Y.1992); *Marine Midland Bank, N.A. v. Endres (In re Endres)*, 103 B.R. 49, 53 (Bankr.N.D.N.Y.1989); *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr.N.D.Ill.1988); *In re Connelly*, 59 B.R. 421, 430 (Bankr.N.D.Ill.1986). "In fact, when a debtor has not been granted immunity from prosecution, the Bankruptcy Code specifically allows him to assert his Fifth Amendment privilege and retain his right to the discharge of his debts." *In re Mudd*, 95 B.R. 426 (Bankr.N.D.Tex. 1989) (referring to 11 U.S.C. §§ 344 [1] and 727(a)(6) [2]).

■■■ When a dispute arises involving a debtor's invocation of his privilege against self-incrimination in a bankruptcy case and dismissal of the case is sought as a remedy, the first inquiry generally made is whether the Fifth Amendment was properly asserted. A debtor's mere statement that the requested information may tend to incriminate him is not sufficient to entitle him to invoke the Fifth Amendment. *See Scarfia v. Holiday Bank*, 129 B.R. 671, 674 (M.D.Fla.1990). The debtor must present credible reasons why responding to the questions would pose a real threat of incrimination. *See In re Connelly*, 59 B.R. 421, 434–35 (Bankr.N.D.Ill.1986). The debtor "must have reasonable cause to apprehend danger of self-incrimination from direct answers to the specific questions posed." *Id.* at 434. In order to properly invoke the privilege, therefore, a debtor must produce, for the court, credible reasons why his answers would incriminate him. *See Scarfia*, 129 B.R. at 674. The debtor is not required to establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege he seeks to assert. *See Connelly*, 59 B.R. at 434. He must, however, substantiate his claim that responding to the specific requests for information may tend to incriminate him. *See Scarfia*, 129 B.R. at 673.

■■■ While a defendant in a criminal proceeding has the absolute right to refuse to take the witness stand, "[i]n any other situation, the privilege [against self-incrimination] does not permit a person to avoid being sworn as a witness or being asked questions. Rather, the person must listen to the questions and specifically invoke the privilege rather than answer the questions." *In re Hulon*, 92 B.R. 670, 675 (Bankr.N.D.Tex.1988). In *Hulon*, the debtor filed her schedules and statement of affairs, attended the section 341 meeting

---

**1.** Section 344 provides: "[I]mmunity for persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V of title 18."

**2.** Section 727(a)(6) provides that the court shall grant the debtor a discharge, unless the debtor has refused:

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court, or to testify;

11 U.S.C. § 727(a)(6).

of creditors, and answered questions posed to her by the Chapter 7 trustee at that meeting. Upon being ordered to appear at a Rule 2004 examination subsequently requested by the Chapter 7 trustee, the debtor appeared but refused to be sworn and instead, asserted her right to silence by invoking the Fifth Amendment privilege. The trustee subsequently moved the court for an order holding the debtor in contempt for violation of the Rule 2004 order, requesting the court to compel the debtor to answer questions at a future examination, and seeking sanctions. The court determined that the debtor's conduct in invoking the privilege prior to being sworn for examination by the trustee was violative of the Rule 2004 order, but was not contemptuous. The court determined that the debtor should not have refused to be sworn, because it was "not persuaded that, because of the threat of incrimination of any relevant question, the debtor is totally excused from responding to relevant inquiries." Instead, the court noted, "[t]he debtor is entitled to invoke the privilege only to genuinely threatening questions, and therefore, is required to take the oath and listen to each question propounded by the trustee." *Id.* at 675. As the *Hulon* case makes clear, a debtor who wishes to invoke the privilege must have a basis for invoking it with respect to each question that he refuses to answer.

 The parties' stipulation and the transcript from the Rule 2004 examination reflects that Blan answered only one question posed to him during the Rule 2004 examination. Such question requested him to state his full name. In response to all other questions posed to him during the examination, the Debtor responded as follows: "I assert my right under the Fifth Amendment of the Constitution of the United States and refuse to answer that question." There is no evidence in the record before this Court that, when he invoked the Fifth Amendment privilege at the Rule 2004 examination in January of 1999, Blan attempted to or had evidence to

substantiate his claim that his response to the each of the questions posed to him by Nacogdoches (with the exception of giving his name) might tend to incriminate him. As the parties' stipulation and the transcript of the Rule 2004 examination reflect, many of the questions posed to Blan concerned the bankruptcy petition, schedules, and statement of affairs, and not his involvement with Nacogdoches. Blan learned in June of 1999, upon receipt of the letter from the United States Attorney for the Eastern District of Texas, of that office's intention to initiate prosecution against him. Although the letter serves to corroborate Blan's previously asserted fears regarding potential criminal prosecution as to questions related to his involvement with Nacogdoches, it does not provide this Court with credible reasons to explain his reluctance to respond to the many questions seemingly unrelated to his involvement with Nacogdoches. Based upon the foregoing, this Court has determined that Blan's assertion of the Fifth amendment privilege against self-incrimination was improper as to at least certain of the questions posed to him at the Rule 2004 examination.

### B. *Waiver of the Privilege*

 Nacogdoches maintains that the Debtor effectively waived his right to assert the Fifth Amendment privilege against self-incrimination, at least as to certain issues, by filing a voluntary petition and schedules in the case, and by answering questions posed to him by the Chapter 7 trustee and Nacogdoches at the section 341 meeting of creditors. The Fifth Amendment privilege against self-incrimination is waived (or lost) if it is not invoked. *Rogers v. United States*, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951) (citing *United States v. Murdock*, 284 U.S. 141, 148, 52 S.Ct. 63, 76 L.Ed. 210 (1931)). Implicit or testimonial waiver of the privilege against self-incrimination will be inferred from a witness' prior statements with respect to the subject matter of the case. *Klein v. Harris*, 667 F.2d 274,

287 (2nd Cir.1981). However, testimonial waiver will not be lightly inferred and "[c]ourts indulge every reasonable presumption against finding a testimonial waiver." *In re Hulon*, 92 B.R. 670, 673 (Bankr.N.D.Tex.1988) (citing *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir.1981) (citations omitted)).

■ In determining whether an individual has waived the privilege against self-incrimination, the distinction between testimony that merely provides the details concerning the facts to which the individual has previously testified and testimony that provides new facts is an important one. The Supreme Court explained the distinction in *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951):

> Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, [an individual] cannot invoke the privilege where response to the specific question in issue … would not further incriminate her. Disclosure of a fact waives the privilege as to details. Thus, if the [witness] himself elects to waive his privilege … and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure…. As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a "real danger" of further crimination.

*Id.* at 372–74, 71 S.Ct. 438 (quoting *Brown v. Walker*, 161 U.S. 591, 597, 16 S.Ct. 644, 40 L.Ed. 819 (1896)). Thus, where an individual's subsequent testimony would only flesh out prior testimony, a waiver is likely to be found.

■ However, an individual may refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him. *See Illinois v. McCulloch (In re Master Key Litig.)*, 507 F.2d 292, 294 (9th Cir.1974). *See also United States v. Seifert*, 648 F.2d 557, 561 (9th Cir.1980); *Shendal v. United States*, 312 F.2d 564, 566 (9th Cir.1963).

■ In *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir.1981), the Second Circuit adopted what has come to be the most widely accepted test for determining whether an individual has waived the Fifth Amendment privilege against self-incrimination. Under that test, a waiver may be found if:

> (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth; and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

*Id.* at 287. *Accord, United States v. Singer*, 785 F.2d 228, 241 (8th Cir.1986). Both prongs of this test must be established before a waiver will be found.

■ Under the first prong, once a witness testifies about an issue, the witness may not relate only part of the story and decide to stop. Rather, the witness must fully disclose what he started to recount and be amenable to cross-examination on the topic. After the witness testifies, that witness may not claim the privilege because it would lead to distortion of the facts. The court's concern is whether the prior statements have "created a significant danger of distortion," because waiver of the privilege should only be recognized in the "most compelling of circumstances." *Horwitz v. Sheldon (In re Donald Sheldon & Co.)*, 193 B.R. 152, 163 (Bankr.S.D.N.Y.1996) (citing *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir.1942); *Rogers v. United States*, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir.1981)). Such compelling circumstances "do not exist unless a failure to find a waiver would unduly prejudice" the other party to the proceeding. *In re*

*Hulon,* 92 B.R. 670, 674 (Bankr.N.D.Tex. 1988). This would occur "if the finder of fact is left with misleading information and likely to rely on that information." *Horwitz v. Sheldon (In re Donald Sheldon & Co.),* 193 B.R. 152, 163 (Bankr. S.D.N.Y.1996) (citing *E.F. Hutton & Co. v. Jupiter Dev. Corp.,* 91 F.R.D. 110, 116 (S.D.N.Y.1981)).

■ Under the second prong of the test, the Court must determine whether the witness had reason to know that his prior statements would be interpreted as a waiver of the privilege. The second prong is established only if a witness' prior statements were both

(a) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding, (citations omitted) and

(b) "incriminating" meaning that they did not deal with matters "collateral" to the events surrounding the commission of the crime.

*Klein v. Harris,* 667 F.2d 274, 288 (citations omitted).

The requirement that the prior statement be made in the same proceeding is of relevance in the present case. As the court pointed out in *In re Hulon,* "[t]he jurisdictional statutes promulgated by Congress creating bankruptcy make a distinction between the terms 'case' and 'proceeding.' Many proceedings may be brought within a single bankruptcy case." *Hulon,* 92 B.R. at 674. "A separate adversary proceeding would relate to but would not necessarily be the same 'proceeding' as the section 341 meeting governing the administration of the case. Consequently, the waiver concept may not apply in serial proceedings in a bankruptcy case." *Id.* "On the other hand, it could be argued, however, that a contested matter, an adversary proceeding, or any other event that transpires in a bankruptcy case should be considered a part of the larger 'bankruptcy proceeding.' In that event, a waiver at any stage of the case would bar the later assertion of the privilege." *Id.*

The court was confronted with this issue in *In re Mudd,* 95 B.R. 426 (Bankr. W.D.Tex.1989), when the Chapter 7 trustee asked the court to impose sanctions against the debtor because the debtor, asserting his Fifth Amendment privilege against self-incrimination, had refused to testify at a scheduled Rule 2004 examination, or to produce documents requested by the trustee. This was despite the fact that the debtor had testified at several prior section 341 meetings and Rule 2004 examinations as to the same or similar subjects. The court determined that the debtor waived his right to assert the privilege against self-incrimination at the Rule 2004 examination by testifying at several prior creditors' meetings and examinations as to the same or similar subject matter. In making that determination, the court ruled that the prior testimony occurred in the "same judicial proceeding." *Id.* at 430–31.

The second requirement of the *Klein* second prong is that the statements initially made in the proceeding be "incriminating." This requirement is satisfied if the prior statement "might provide a clue leading investigators to discover facts that could constitute links in a chain of circumstantial evidence proving the invoker's criminal conduct." *Hulon* at 674 (citing *Hoffman,* 341 U.S. at 486, 71 S.Ct. 814, 95 L.Ed. 1118). In *Mudd,* the court found that the debtor's prior statements were "incriminating" because they did not deal with matters collateral to the crimes with which the debtor had been charged. Rather, the statements made were directly related to the subject matter of the criminal indictments against him. The court held that the debtor's "prior testimony waived his Fifth Amendment privilege to refuse to testify as to the details of previously disclosed facts, unless revealing those details would further incriminate him or subject him to new areas of incrimination." *Mudd,* 95 B.R. at 431.

Notably, the standard used by the courts in determining whether testimony is "incriminating" for purposes of the second prong of the *Klein* test is the same standard used by courts to determine whether an answer is incriminating for purposes of substantiating the witness' invocation of the Fifth Amendment privilege. Accordingly, one might expect that if an individual could have successfully invoked the Fifth Amendment before testifying previously, but did not, the second prong of the *Klein* test would be established.

■ Applying the first prong of the *Klein* test to the facts before the Court in this case, it does not appear that Blan's statements at the section 341 meeting created a "significant likelihood that the finder of fact would be left with and prone to rely on a distorted view of the truth." If an inaccuracy exists, it would appear to this Court, based upon a review of the transcript from the section 341 meeting, to be more probably the result of attenuated questioning by the Trustee and Nacogdoches (apparently in anticipation of conducting more detailed questioning at the Rule 2004 examination scheduled only one week later[3]), than a result of Blan's purposeful distortion of the facts.

Further, it appears to this Court that the second prong of Klein (that the witness had reason to know that certain of his prior statements would be interpreted as a waiver of the Fifth Amendment's privilege against self-incrimination) has not been established under the facts of this case. The statements made by Blan at the section 341 meeting were arguably "testimonial," i.e., made voluntarily made under oath in the context of the "same judicial proceeding." However, it is not clear to this Court that the statements were "incriminating." In fact, at the point that the Chapter 7 trustee began to ask questions about the Nacogdoches lawsuit, Blan asserted his Fifth Amendment privilege.

As noted above, waiver of the Fifth Amendment privilege against self-incrimination should be recognized in only the "most compelling of circumstances." Such circumstances do not exist in this case because a failure to find a waiver would not unduly prejudice Nacogdoches. This Court entered an order granting Nacogdoches relief from the automatic stay to pursue the Texas action. The adversary proceeding filed in this case has been continued pending the outcome of the Texas action. Accordingly, a finding of waiver is not appropriate under the facts of this case.

The Court would also note that even if it were determined that Blan waived his Fifth Amendment privilege, it is well settled that a debtor may refuse to testify as to the details of previously disclosed facts if revealing those details would further incriminate him or subject him to new areas of incrimination. Of course, before he may assert this Constitutional privilege, he must have cause to apprehend danger of self-incrimination from direct answers to specific questions posed. The possibility of further incrimination may exist in this case. The parties' stipulation reflects that the Debtor's deposition at the Rule 2004 examination "was taken both for the purpose of examining the Debtor in detail with regard to the Petition, schedules, and statement of affairs, *as well as to discover information from the Debtor in connection with the adversary proceeding filed against him by the Movant, Nacogdoches County Hospital District.*" (emphasis added). The stipulation further reflects that "[m]atters inquired of by the Debtor, Gary James Blan, during such deposition related to issues concerning administration of the Debtors' estate, *as well as to issues concerning dischargeability of Mr. Blan's debt to the Movant/creditor, Nacogdoches County Hospital District.*" (emphasis added). As noted above, the adversary pro-

---

**3.** When he began his questioning at the section 341 meeting of creditors, counsel for Nacogdoches stated, "I'll ask just a few—a Rule 2004 examination is coming up. I don't want to waste any time since we have scheduled a deposition of Mr. Blan for next week."

ceeding in this case and the Texas civil suit against the Debtor concern the Debtor's employment relationship with Nacogdoches and allege fraud by the Debtor. The letter from the United States Attorney to the Debtor indicates that the office of the United States Attorney for the Eastern District of Texas intends to initiate prosecution against him arising from allegations concerning his involvement in defrauding Nacogdoches while employed by the hospital. It is clear from the transcript of the Rule 2004 examination that Nacogdoches sought to explore in greater detail facts stated by the Debtor at the section 341 meeting of creditors, and those related to the Debtor's relationship with Nacogdoches. That information, if elicited from the Debtor, may tend to further incriminate him by helping Nacogdoches and/or the government pinpoint more fruitful areas of inquiry.

### C. Dismissal as Remedy for Improper Assertion of Privilege

■■■■ Although the Debtors' assertion of the Fifth Amendment privilege does not appear to have been proper, at least as to some of the questions raised at the Rule 2004 examination, the inquiry does not end there. In determining whether cause for dismissal exists, a second inquiry in these matters is whether the debtor's assertion of the Fifth Amendment privilege impedes the basic administration of the bankruptcy case. *See In re Connelly,* 59 B.R. 421 (Bankr.N.D.Ill. 1986). In *Connelly,* a Chapter 7 debtor refused to provide any information whatsoever regarding his Chapter 7 case, and instead invoked his Fifth Amendment privilege. The only three items furnished by the debtor were his name, address, and social security number. The court concluded that his blanket assertion of the privilege was impermissible in the Chapter 7 case because the debtor "deprived the trustee of information needed to administer the case, and hindered other parties in interest in the prosecution of any claims

they might have against the debtor." *Connelly,* 59 B.R. at 450–51.

Similarly, in *In re Peklo,* 201 B.R. 331 (Bankr.D.Conn.1996), the Chapter 7 trustee sought dismissal of the debtor's case following the debtor's assertion of the Fifth Amendment privilege and refusal to answers questions posed to him by the Chapter 7 trustee. The questions concerned the truth and accuracy of his schedules and the existence of pre-petition transfers and inheritance assets. A creditor, the FDIC, joined in the trustee's motion. Relying, in part, on the *Connelly* decision, the court dismissed the case pursuant to 11 U.S.C. § 707(a), "for cause," finding that the debtor's refusal to answer questions at the meeting impaired the Chapter 7 trustee's ability to effectively administer the estate. *Peklo,* 201 B.R. at 333.

In *In re Wincek,* 202 B.R. 161 (Bankr. M.D.Fla.1996), the court also dismissed the debtor's case where the debtor failed to justify his assertion of the privilege and the assertion of the privilege impeded the administration of the debtor's Chapter 13 bankruptcy case. In *Wincek,* the debtor failed to disclose any information regarding his income, either in his bankruptcy schedules or at his meeting of creditor. The court determined that the Chapter 13 trustee could not determine whether the debtor was applying all his disposable income to the Chapter 13 plan as required by 11 U.S.C. § 1325(b) of the Bankruptcy Code and dismissed the case under 11 U.S.C. § 1307(c) for cause. *Wincek,* 202 B.R. at 169.

In contrast, in *In re Fekos,* 148 B.R. 10 (Bankr.W.D.Pa.1992), the court refused to grant a creditor's motion to dismiss the debtor's Chapter 7 case after the debtor invoked his Fifth Amendment privilege and refused to answer questions at a Rule 2004 examination. Whether the privilege was properly asserted was not an issue in the case as the court was satisfied that there was an on-going investigation by government authorities into potential crim-

inal activities of the debtor. The court held that the debtor's refusal to answer questions at the Rule 2004 examination did not mandate dismissal of the case absent a showing that such refusal made it impossible for the Chapter 7 trustee to administer the estate. *Fekos,* 148 B.R. at 12–13.

Although it appears in the instant matter that the Debtor's assertion of the Fifth Amendment privilege may have been improper as to many of the questions posed to him at the Rule 2004 examination, there has been no showing that his refusal to answer those questions hampered the Chapter 7 Trustee's ability to administer the bankruptcy estate. Notably, the Trustee has not joined in Nacogdoches' motion to dismiss the case. Nacogdoches is not hindered in its prosecution of claims in the bankruptcy case, and has, in fact, been granted relief to proceed with its lawsuit against the Debtor in Texas state court. Absent a showing that the case cannot be effectively administered, Nacogdoches' motion to dismiss should be and is hereby denied.

IT IS SO ORDERED.